**Supreme Court**

No. 2010-361-C.A.

(P1/09-1119A)

State                                        :

v.                                        :

Mustapha Bojang.                        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.                     :

Mustapha Bojang.             :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  After a six-day trial, a Superior Court jury convicted the defendant, Mustapha Bojang (defendant), of two counts of first-degree child molestation sexual assault.  The defendant contends that the trial justice committed three errors that require this Court to vacate those convictions: (1) the denial of the defendant's motion to suppress statements made to police during a post-arrest interrogation; (2) the refusal to allow the defendant to inquire into a false accusation of physical abuse by the complainant against her mother; and (3) the denial of the defendant's motion for a new trial.  For the reasons set forth below, we remand the case to the Superior Court with directions to the trial justice to make additional findings of fact and credibility determinations concerning the voluntariness of the defendant's confessions.

### Facts and Travel

The defendant came to the United States from West Africa in 2005 on a student visa. After brief stays in Maryland and Missouri, defendant settled in Woonsocket with the Manneh family.  Mrs. Manneh (Jainoba) was the cousin of defendant's wife, who remained in Africa

while defendant traveled to the United States. Jainoba[1] lived in a second-floor apartment with her husband, Abou Manneh, and their three children, including the complainant, Jasmine.[2] The defendant lived with the Manneh family from January 2005 until December 2007; a number of other adult males also lived in the apartment with the Mannehs from time to time.[3] Because he was home in the afternoon, defendant would sometimes babysit Jasmine if neither Abou nor Jainoba was home.

The sexual abuse that is the subject of this case occurred in 2007, when Jasmine was eight years old. Jasmine first disclosed the sexual molestations to her fourth-grade teacher and a school guidance counselor in January 2009. After Jasmine reported defendant's alleged abuse, the school officials contacted the Department of Children, Youth and Families (DCYF). When DCYF investigator Sue Kalo (Kalo) interviewed Jasmine, she disclosed that she was raped twice by defendant. Soon after that interview, Jasmine was examined by Dr. Christine Barron (Dr. Barron); the child indicated two separate instances of sexual abuse to Dr. Barron. Doctor Barron's examination was normal, revealing no evidence of physical trauma.

When Jasmine's father learned about her disclosures, he met with Kalo and reported the sexual abuse allegations to the Woonsocket police on January 27, 2009. Based on the information provided by DCYF and a Child Advocacy Center (CAC) interview, Woonsocket Police Det. Kevin Hammann (Det. Hammann) obtained an arrest warrant for defendant. At the

---

[1] For clarity, the Court refers to members of the Manneh family by their first names; no disrespect is intended.

[2] Because the victim was a minor when the alleged offenses occurred, we use a pseudonym to protect her privacy. See G.L. 1956 § 11-37-8.5 (mandating confidentiality of records concerning victims of child molestation sexual assault).

[3] Additionally, other members of the Manneh family lived in apartments on the first and third floors of the tenement building.

time, defendant was living with Abou's brother at another location in Woonsocket. Detective Hammann and Woonsocket Police Det. Ronald LaBreche (Det. LaBreche) arrested defendant at that site on February 2, 2009. Woonsocket Police Officer Anthony Conetta transported defendant to the Woonsocket police station. For clarity, we recount the evidence concerning the voluntariness of defendant's statements as gleaned from the entire trial record and not simply the suppression hearing.

Once at the police station, Dets. Hammann and LaBreche conducted two interviews with defendant: an initial unrecorded interview followed by a recorded confession.[4] The detectives first placed defendant in the juvenile conference room, which has no recording equipment. During that interview, defendant agreed to waive his Miranda rights and signed a rights form. The testimony at trial produced divergent accounts of the events in the first interview room. At trial, the detectives testified that the interview was largely calm, although Det. LaBreche raised his voice and pounded on the table to get defendant's attention. While the detectives acknowledge raising defendant's immigration status during the interview, each officer denied threatening deportation if he refused to cooperate.[5] On the other hand, defendant testified at trial that, after he accused Jasmine of lying, Det. LaBreche responded, "Kids don't lie" and struck him in the head. According to defendant, after he expressed a willingness to take a lie detector test, Det. LeBreche hit him again and said, "This is your lie detector test. Shut the f*** up."

---

[4] The Woonsocket Police Department's policy gives the detective in charge of an investigation the discretion as to whether to use the interview room with recording capabilities. Detective Hammann testified that officers in his unit typically begin interviewing suspects or victims in the juvenile conference room, which lacks recording capabilities, because it is closer to their cubicles than the interview room with recording capabilities.

[5] At trial, defendant testified that his visa had expired about two months before he was arrested. Although he had applied for permanent resident status, he had not yet received a response.

The defendant also alleged that the detectives told him that he would be deported if he refused to cooperate.

Detective Hammann testified that, after first denying the allegations against him, defendant admitted that he kissed Jasmine on the lips and that on one occasion he stuck his finger in Jasmine's vagina. Detective LaBreche initially testified that, after defendant admitted to kissing Jasmine on the lips, the detectives decided to bring him to the interview room with recording capabilities. After having his recollection refreshed by Det. Hamman's witness statement, however, Det. LaBreche testified that, in the first interview, defendant also confessed to sticking his finger in Jasmine's vagina and rubbing up against her on two occasions, once when she was clothed and the other unclothed.

According to Det. Hammann, after the verbal admissions, he requested that defendant provide a video and audio interview, and defendant agreed. The detective brought defendant to a different room with recording capabilities. Once again, defendant signed a form waiving his Miranda rights. In the recorded interview, defendant admitted to assaulting Jasmine multiple times. He admitted to kissing her three times and rubbing against her while clothed "a couple of times." He admitted to penetrating her vagina digitally, while in the family sitting room, when Jasmine was home sick from school. Finally, defendant admitted to rubbing his naked body against hers, while on his bed, until he ejaculated. We pause to note that, although defendant argued, both in the papers and again at oral argument, that the jury's verdict related only to the crimes to which he confessed, such is not the case. The defendant never admitted to penile

penetration, yet the jury found him guilty of count 8, which charged defendant with "[First] degree child molestation sexual assault, to wit, penis to vagina * * *."[6]

Prior to trial, defendant moved to suppress all statements to the police, arguing that use of those statements would violate the Fifth and Fourteenth Amendments to the United States Constitution and article 1, section 6 of the Rhode Island Constitution because the statements were "the result of physical, psychological coercion and also because of the State's or the police department's failure to record the interrogation in its entirety."[7] After a two-day hearing, however, the trial justice denied the motion. In his bench decision, he noted the difference in dynamics of Det. Hammann's direct examination and cross-examination testimony, as well as the witness's professed failure of memory about portions of the first interrogation. Specifically, Det. Hammann could not remember whether a table was pounded or whether Det. LeBreche struck defendant in the head. However, the trial justice failed to make any credibility determinations concerning Det. Hammann's testimony.

Turning to the videotaped confession, however, the trial justice found that defendant was relaxed and not apprehensive. Ultimately, the trial justice declared that the state had proven by clear and convincing evidence that the confession obtained during the second interview was not the product of coercion and that defendant knowingly, intelligently, and voluntarily waived his Miranda rights.

At trial, the videotaped interview was admitted into evidence and played for the jury, over defendant's renewed objection. Detective LaBreche—who did not testify at the suppression

---

[6] The jury instructions for first-degree child molestation sexual assault required proof of sexual penetration, defined as "any intrusion, however slight, by any part of one person's body into the genital openings of another person's body."

[7] The challenge to admissibility based on the failure to record the entire interview is not before this Court and is therefore deemed waived.

hearing—testified about incriminating statements defendant also made during the first interview. Detective Hammann also gave similar testimony about the first interview. The record discloses that both detectives were subject to vigorous cross-examination respecting the voluntariness of defendant's confessions.

At trial, Jasmine described a number of sexual assaults by defendant. She testified that, when she was eight years old and in second grade, defendant pulled her into his room, locked the door, shut off the light, and took her clothes off. He then pushed her onto his bed and engaged in vaginal intercourse with her. Jasmine testified that during this molestation, defendant threatened to kill her or beat her up if she told anyone. After the intercourse ended, Jasmine noticed something white and wet in the middle of the bed, and defendant asked her to get a napkin for him. Jasmine then went to the bathroom, where she noticed blood on her vagina and underwear.

Next, Jasmine testified to another similar assault where defendant carried her from the living room to his bedroom and forced her to engage in sexual intercourse while her parents were not home. Again, she noticed blood. The child also liked to play online games on defendant's computer. One day, when she asked to use his computer, he told her she had to come into his room. Although she refused, Jasmine testified that defendant pulled her into his room anyway and again engaged in sexual intercourse with her.

Jasmine testified to five other instances of forced sexual intercourse. One instance occurred on the couch when she was home sick from school; another assault occurred in his bedroom after she returned from her aunt's house; another assault occurred in her bedroom; and two more assaults occurred in defendant's bedroom. Additionally, Jasmine testified that during one of the assaults in defendant's bedroom, he also digitally penetrated her vagina.

Doctor Barron also testified during the state's case-in-chief. As noted above, her physical examination of Jasmine was normal and showed no signs of trauma. However, Dr. Barron testified that a normal examination does not rule out sexual abuse and that "95 percent of children will have a normal exam, particularly if they're examined [more than] two weeks outside of the incident." At the time of Dr. Barron's examination, on January 27, 2009, Jasmine's allegations of sexual abuse related to events which allegedly occurred a year earlier. She therefore concluded that the medical examination neither ruled out nor confirmed the possibility of sexual abuse.

In accordance with this state's Humane Practice Rule, the trial justice's charge to the jury included an instruction that, in order to consider defendant's custodial interrogation, the jury must find that the prosecution had proved by clear and convincing evidence that defendant knowingly and voluntarily waived his Miranda rights. The jury returned a verdict of guilty on two counts, one for digital penetration (count 7) and one for penile penetration (count 8), but found defendant not guilty on the remaining counts of penile penetration.[8]

After trial, defendant filed a motion for a new trial. The arguments focused on the consistency or inconsistency of Jasmine's testimony as well as the testimony of other witnesses. In his bench decision, the trial justice recounted much of the salient testimony. Again referring to the testimony from the suppression hearing, the trial justice acknowledged that he made no finding on whether defendant had been struck by a police officer in the first interrogation; but, noting defendant's demeanor in the second, recorded interview, he was satisfied that defendant was not coerced into making his statement:

---

[8] Counts 1-6 and count 8, in the indictment as well as set forth on the verdict form, recite identical charges of first-degree child molestation sexual assault for penile-vaginal penetration. No bill of particulars was filed in this case.

"I've noted on the record prior to this that I did observe Mr. Bojang to have some degree of comfort as the video progressed. Even if the police officer had, in fact, struck Mr. Bojang, and I made no finding on that issue, but it did not appear Mr. Bojang on the videotape was coerced into giving that statement."

Based on his review of the evidence, the trial justice denied the motion for a new trial. The trial justice sentenced defendant to thirty years, twenty years to serve, ten years suspended with probation on each count, running concurrently.

### Motion to Suppress Confession

The defendant contends that the trial justice erred by denying his motion to suppress his statements to police obtained during a custodial interrogation. "Both the Rhode Island and the United States Constitutions bar the use of a defendant's involuntary statements in a criminal trial." State v. Bido, 941 A.2d 822, 835 (R.I. 2008) (citing State v. Humphrey, 715 A.2d 1265, 1274 (R.I. 1998)). In order for the trial justice to admit a defendant's statement at trial, "the state must establish, by clear and convincing evidence, that the defendant knowingly and intelligently waived his or her right against self-incrimination and that the statement was voluntary." State v. Monteiro, 924 A.2d 784, 790 (R.I. 2007) (citing Humphrey, 715 A.2d at 1274). This inquiry "requires an analysis of the 'totality of the circumstances surrounding the interrogation.'" State v. Jimenez, 33 A.3d 724, 734 (R.I. 2011) (quoting State v. Leuthavone, 640 A.2d 515, 519 (R.I. 1994)). "A voluntary statement is a product of free will and rational choice, whereas a statement is deemed involuntary when the defendant's will was overcome by coercion, threats, violence, or undue influence." Monteiro, 924 A.2d at 790 (citing Humphrey, 715 A.2d at 1274). If the trial justice is satisfied, by clear and convincing evidence, that the defendant's will was not overcome by coercion, threats, violence, or other undue influence and the confession was the product of his rational choice, the motion to suppress must be denied. See id. This Court applies the following two-step review of a trial justice's finding of voluntariness:

- 8 -

> "First, we review the trial justice's findings of historical fact with deference, and we will not overturn those findings unless they are clearly erroneous. * * * Second, because this issue is of constitutional dimension, we accept the historical facts and credibility determinations, and we then conduct de novo review of the trial justice's conclusion that the confession was voluntary." Id. (citing State v. Kryla, 742 A.2d 1178, 1183 (R.I. 1999)).

In this analysis, we consider the totality of the circumstances. Id. at 791; see also Jimenez, 33 A.3d at 734.

In addition to this constitutional analysis, in this jurisdiction we employ the Humane Practice Rule, under which the trial justice first makes his or her own determination on the voluntariness of the confession. State v. Tassone, 749 A.2d 1112, 1118 (R.I. 2000). If the trial justice determines that the statement was made voluntarily, he or she

> "is required to instruct the jury that, based on the totality of the circumstances, 'it must find by clear and convincing evidence that the defendant's confession was voluntary, and that [the] defendant had been advised of his constitutional guarantee against self-incrimination (the Miranda Rights so-called), before the jury may consider the statement as evidence.'" State v. Aponte, 800 A.2d 420, 427 (R.I. 2002) (quoting Tassone, 749 A.2d at 1118).

Thus, under the Humane Practice Rule, both the trial justice and the jury must separately find, by clear and convincing evidence, that a confession was voluntary before it may be considered as evidence to support a conviction. See id.

In his bench decision on the motion to suppress, the trial justice failed to adequately perform his factfinding analysis regarding the first interview. Although he noted that Det. Hammann repeatedly declared that he could not remember whether Det. LaBreche pounded the table or slapped defendant in the head during the first interrogation, he declined to rule on those questions or address what effect that conduct, if proven, might have on the question of voluntariness of either confession. Additionally, the trial justice noted Det. Hammann's delayed response time to questions posed during cross-examination, "all of which [left the trial justice]

- 9 -

wondering exactly what went on in [the first] interview room * * *." Summarizing his thoughts, the trial justice stated,

> "Based on the observations that I just put on the record, I did not find any apprehension, if there was any, that was manifested by the conduct that I observed in the interview. I'm not sure what caused the detective to break down and be unable to answer the questions in this particular case other than I understand the argument about the tacit admissions, I also understand that you have a police officer who may be apprehensive as well that somebody could put some words in his mouth. I'm speculating. I am speculating here because I don't know. I listened and I watched intently and that cross-examination went on for a great deal of time. So, while I had some forty minutes to watch Mr. Bojang on the video, I had an equally long time to observe Detective Hammann. Even if I grant that Detective Hammann's not remembering and his failure to answer is a tacit admission, in order to suppress the confession I still have to find that whatever occurred in interview room (number one) where there was no recording, I have to find that induced Mr. Bojang into making that confession, and even if I get to the first set of inferences, and if we get to a jury in this case, I'll tell the jury what an inference is, and they are free to draw inferences, and [defense counsel] is going to be able to cross-examine the detective pretty much the same way he did here in the courtroom * * * ."

However, regarding the second, recorded interview, the trial justice concluded that defendant was relaxed, not overly apprehensive, and became increasingly comfortable as the interview progressed. Notwithstanding his observations about the first interview, the trial justice found that the recorded confession was not the product of coercion and denied the motion to suppress:

> "Now, all of that being said, I find that the State has proven by clear and convincing evidence that the confession was not the product of coercion, and I also find that Mr. Bojang knowingly, intelligently, and voluntarily waived his constitutional rights that are expressed in the case of <u>Miranda versus Arizona</u>, and my findings are based on the articulations that I just made in the past several minutes and especially my watching of Mr. Bojang as he read the form during interview number two. He took some time to read that form, checked off various parts of it, and affixed his signature at the end.

"I will note the defendant's exception to the Court's ruling. I'm going to deny the motion to suppress."

## The State's Concession

Before this Court, the state has conceded that the trial justice failed to make the findings of fact and credibility determinations that are essential to support his ultimate finding of voluntariness. The state argues that the case should be remanded for either a new evidentiary hearing or, at least, additional findings on defendant's motion to suppress.[9] In the wake of this concession, defendant altered course respecting the relief he seeks. In his opening brief, defendant argued that he was entitled to a new evidentiary hearing to determine the voluntariness of his statement; however, in his reply brief he has abandoned that argument and now he contends that this Court must vacate the convictions, suppress the statements, and grant him a new trial.[10]

Our case law in this area is clear and unwavering; the appropriate procedure in this circumstance is to remand the case to the Superior Court so that the trial justice can make the appropriate findings of fact and conclusions of law. In Andrews v. Langlois, 105 R.I. 456, 458, 252 A.2d 450, 452 (1969), this Court reviewed a petition for habeas corpus stemming from a conviction after a trial in which the trial justice failed to conduct a preliminary hearing on the issue of the voluntariness of the petitioner's confession. The trial justice admitted into evidence a signed statement and a tape recording of an oral statement at trial; the defendant was convicted

---

[9] Although the state's brief requests a new evidentiary hearing, when asked at oral argument whether the state was seeking a new evidentiary hearing or additional findings based on the current record, the state declined to take a position.

[10] At oral argument, when asked whether defendant preferred a new evidentiary hearing or merely additional findings based on the current record if the case was remanded, defense counsel responded that a remand should be limited to additional findings based only on the record of the suppression hearing. Notably, defendant did not testify at the suppression hearing.

of second-degree murder and sentenced to life imprisonment.  Id. at 457, 458, 252 A.2d at 451, 452.  In the face of this error, this Court laid out a procedural roadmap for similar situations; the Court stated,

> "If the jury had been properly instructed on the law governing the issue of voluntariness, we would remit this case to the [S]uperior [C]ourt for a limited hearing on [the issue of the voluntariness of his confession] alone.  If at such hearing it was determined that the confession was voluntary and admissible in evidence, a new trial on the question of guilt or innocence would not necessarily be required because petitioner has already been tried by a jury and been found guilty.  If, on the other hand, at the limited hearing it was determined that the confession was involuntary, there would have to be a new trial on guilt or innocence, without the confessions being admitted in evidence."  Id. at 461-62, 252 A.2d at 454 (emphases added).

Ultimately, the Court granted a new trial to the defendant because of "an erroneous [jury] charge on the question of voluntariness."  Id.  at 462, 252 A.2d at 454.  Here, however, defendant does not allege that the trial justice's Humane Practice instruction to the jury on voluntariness was erroneous.  Thus, the procedure mandating a limited remand is appropriate.

Since our decision in Andrews, this Court has employed the same procedure in cases in which there has been a flawed suppression hearing.  In State v. Brown, 468 A.2d 914, 914 (R.I. 1983), the sole issue raised on appeal was the denial of the defendant's motion to suppress a statement given to police following his warrantless arrest.  The defendant asserted that the police officer lacked probable cause to arrest him, but the trial justice sustained an objection to a question posed to the arresting police officer on hearsay grounds at the suppression hearing.  Id. On appeal, this Court noted that probable cause may be established by hearsay evidence, and "[o]nly with this information in the record could the trial justice initially, and this court now, determine whether or not the officer or officers who arrested the defendant had probable cause to do so."  Id. at 915.  We thereupon remanded the case "for an evidentiary hearing and for findings

of fact on the issue of probable cause for [the defendant's] arrest." Id. Likewise, in State v. Mastracchio, 672 A.2d 438, 442 (R.I. 1996), the defendant sought to suppress the fruits of an allegedly illegal search under the knock-and-announce rule. However, "the trial justice * * * did not articulate any factual findings either in speech or in writing in regard to his ruling denying defendant's motion to suppress in the first instance," id. at 443, and this Court vacated the decision and remanded the case "in order to allow the trial justice to enter findings of fact and to make the determination in the first instance of whether the unannounced entry by police was reasonable under the Fourth Amendment." Id.

More recently, in State v. Verrecchia, 766 A.2d 377, 380 (R.I. 2001), the trial justice found that the defendant had no legitimate expectation of privacy in a garage that he rented; thus, the trial justice did not analyze whether a search of that garage was reasonable. On appeal, this Court held that the defendant did have an expectation of privacy in the garage and remanded the case "for a hearing on [the defendant's] motion to suppress so that the court can determine whether the police violated any of [the defendant's] constitutional rights by searching his garage and by seizing certain property found therein as evidence of his criminal acts." Id. at 384. In our mandate to the Superior Court, this Court directed,

> "If the motion justice concludes after conducting this hearing that the evidence should not be suppressed, he or she should enter an order to that effect and the convictions shall stand as affirmed, subject to any appeal concerning this ruling. If, on the other hand, the motion justice decides to grant the motion to suppress, then he or she shall vacate [the defendant's] convictions and conduct a new trial." Id. at 391.

This procedure reflects our longstanding reluctance to engage in factfinding or to make credibility determinations in the first instance. See, e.g., Brown, 468 A.2d at 915 ("With the present state of the record, we are unable to consider this appeal."). The trial justice is uniquely positioned to make findings of fact. See State v. Chum, 54 A.3d 455, 460 (R.I. 2012) (noting

- 13 -

that deference is given to a trial justice's factual findings). Conversely, "[t]he cold record does not enable an appellate court to evaluate how the witness's demeanor may have affected his credibility." State v. Young, 456 A.2d 739, 741 (R.I. 1983).

Therefore, we remand the case for the trial justice to make additional findings of fact and credibility determinations regarding the first interview.

## The Scope of the Remand

The dissent's only point of disagreement is the scope of the remand. The dissent would limit the remand to the record of the suppression hearing. We, however, leave to the trial justice the decision to permit or disallow additional evidence or to limit his analysis to the trial testimony. None of the cases cited by the majority are inapposite; these holdings support the well settled mechanism of a limited remand. While the dissent is correct that the cases we cite do not present precisely the same situation that we have here, in none of those cases did the Court explicitly strip the trial justice of the discretion to permit additional evidence. We decline to do so today.

The cases cited by the dissent do not compel this Court to change its practice of vesting trial justices with the discretion to conduct proceedings as they see fit. The justices of the Superior Court are in a far better position than this Court to determine the best procedure to justly resolve the issues that confront them. The dissent cites United States v. Kithcart, 218 F.3d 213 (3d Cir. 2000), for its holding that the trial court erred by permitting additional evidence after a remand of a suppression issue. The Third Circuit, however, concluded that the error was "in admitting additional evidence upon remand without the explanation that is required" under the Third Circuit's precedent United States v. Vastola, 915 F.2d 865, 876 (3d Cir. 1990). Kithcart, 218 F.3d at 221 (emphasis added). The Third Circuit declared, "the question of

- 14 -

whether the government may augment the record at a suppression hearing after a remand is analogous to the question of whether the government may reopen its case after resting. Such decisions are traditionally within the discretion of the district court."[11] Id. at 219 (citing Vastola, 915 F.2d at 876) (emphasis added). Vesting the trial justice with such discretion is similarly the practice of this state. Cf. State v. Benevides, 420 A.2d 65, 68 (R.I. 1980) ("[A] motion to reopen a case to introduce additional evidence is addressed to the discretion of the trial justice and a decision made in the exercise of such discretionary power will not be disturbed by this court on appeal absent a showing of an abuse of that discretion.").

Additionally, Southern v. State, 807 A.2d 13 (Md. 2002) is unpersuasive for two reasons. First, the holding is grounded in a unique rule of appellate procedure in Maryland and Maryland case law. See id. at 24 (relying on "the intent of [Md. Rule 8-604(d)(1)] and Maryland case law reviewing this rule"). Second, the facts are widely divergent. In Southern, 807 A.2d at 21, the court stated,

> "This is not a case where the motions hearing judge simply did not rule, it is a case where the State, which had the burden of proof on the constitutionality of the initial detention at the suppression hearing, admits that it did not present sufficient evidence to support the constitutionality of the stop." (Emphasis added.)

In the case before us, the trial justice "simply did not rule."

Finally, the Court notes that there was extensive testimony at trial respecting the voluntariness of the confession in accordance with this state's Humane Practice Rule. Thus, the trial justice heard a great deal of evidence relating to the issue on remand. We decline to direct a justice of the Superior Court to ignore hundreds of pages of testimony in deciding this discrete issue.

---

[11] Notably, the dissent employs the first sentence of this quotation, but omits the second. It also lacks any discussion of this state's analogous practice on motions to reopen.

Therefore, we leave to the trial justice the decision to permit or disallow additional evidence or to limit his analysis to the trial testimony.

## Exclusion of Prior False Accusation

The defendant contends that the trial justice erred by refusing to allow defendant to inquire into the complainant's prior false accusation of physical abuse against her mother. In a voir dire hearing, Jasmine testified, on cross-examination, that—about a month before she first disclosed the sexual abuse at issue here—she was intimidated by a bully at school, who told her to tell the teacher that her mother abused her, or the bully would kill her; Jasmine admitted that her mother did not abuse her. The defendant argues that the evidence was admissible under Rules 608(b) and 404(b) of the Rhode Island Rules of Evidence and that, to the extent this issue was preserved,[12] the exclusion violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. "We review a challenge to a trial justice's limitation on cross-examination under an abuse of discretion standard, and we will not disturb the exercise of that discretion absent a clear abuse of discretion." Chum, 54 A.3d at 460. The ruling must amount to "prejudicial error" to constitute a clear abuse of discretion. Id. "Nonetheless, we have held that the trial justice's 'discretion must be exercised in a manner consistent with the constitutional guarantees involved.'" State v. Lomba, 37 A.3d 615, 621 (R.I. 2012) (quoting State v. Patriarca, 112 R.I. 14, 37, 308 A.2d 300, 315 (1973)).

Rule 608(b) provides,

> "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, or, in the discretion of the trial judge, evidence of prior similar false accusations, may not be proved by extrinsic evidence. They may,

---

[12] At oral argument, despite a record devoid of a direct reference to the Sixth Amendment or the right of confrontation, the state conceded that the Sixth Amendment argument was preserved.

> however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

In this case, the trial justice found that Jasmine's allegations of physical abuse against her mother were not sufficiently similar to the sexual abuse allegations against defendant. We agree. A prior allegation of sexual assault by someone other than the accused differs markedly from an allegation of physical assault against one's parent. Although not directly addressing Rule 608(b), in State v. Botelho, 753 A.2d 343, 346-47 (R.I. 2000), this Court acknowledged our prior cases that permitted cross-examination into previous sexual assault allegations in sexual assault prosecutions, but concluded that a complainant's "complaint of excessive discipline, purportedly lodged against her father and her mother's former boyfriend, is fundamentally different from a complaint of sexual molestation." Accordingly, we are of the opinion that the trial justice did not abuse his discretion under Rule 608(b) by preventing cross-examination into Jasmine's prior allegation against her mother.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts" may be admissible to prove "motive[.]" On appeal, defendant contends that Jasmine's accusations of rape were "motivated by [Jasmine's] fear of [a] sadistic bully." We reject this contention. Although Jasmine did testify in the voir dire hearing that a bully at school told her to make an allegation of abuse against her mother, there is no suggestion that the bully told Jasmine to make a rape allegation. Indeed, Jasmine testified that the bully did not tell her to make a rape allegation, nor did the bully even know about the abuse:

> "Q: Did [the bully] ever tell you something like, you should tell that somebody raped you?
>
> "A: No, she didn't know about it."

Thus, there is no evidence that Jasmine's fear of the bully motivated her to allege sexual abuse against defendant.

We pause to note that the exclusion of this evidence precisely reflects policy considerations that underlie Rule 403 of the Rhode Island Rules of Evidence, which provides for the exclusion of evidence when "its probative value is substantially outweighed by the danger of * * * confusion of the issues, or misleading the jury * * *." See State v. Gaspar, 982 A.2d 140, 147-48 (R.I. 2009) (noting that "Rule 403 cuts across the rules of evidence and is always a consideration in a trial justice's ruling on the admissibility of Rule 404(b) evidence"). Accordingly, the trial justice did not abuse his discretion under Rule 404(b) by preventing cross-examination into Jasmine's prior allegation against her mother.

The Confrontation Clause secures the right to cross-examine witnesses. Botelho, 753 A.2d at 345 ("The right to cross-examine witnesses is a primary interest secured by the [C]onfrontation [C]lause."). A criminal defendant has a "well-established, constitutionally-protected right * * * to [an] effective cross-examination of the prosecution's witnesses." State v. Dubois, 36 A.3d 191, 198 (R.I. 2012). That right is not absolute. Id. "[T]rial justices retain a considerable degree of discretion to impose reasonable limitations on cross-examination in order to prevent, inter alia, harassment, prejudice, confusion, or repetitive testimony." State v. Tiernan, 941 A.2d 129, 134 (R.I. 2008). "To satisfy the constitutional right of cross-examination, 'the trial justice is required to afford the accused "reasonable latitude" to establish or reveal bias, prejudice, or ulterior motives as they may relate to the case being tried.'" State v. Clark, 974 A.2d 558, 575 (R.I. 2009) (quoting State v. Bustamante, 756 A.2d 758, 765 (R.I. 2000)).

Here, defendant was provided with an ample opportunity to cross-examine Jasmine; he deftly tested the consistency of her testimony at trial and in her prior statements. Furthermore, during the voir dire hearing, Jasmine denied that the bully told her to make a rape allegation. It was appropriate for the trial justice to draw the line and not allow inquiry into the prior accusation because it would have served only to confuse the jury. See Botelho, 753 A.2d at 347 (admission of certain evidence "would have served only to confuse and mislead the jury"). Therefore, the trial justice's refusal to allow cross-examination on Jasmine's allegations against her mother did not violate the Confrontation Clause.

## Motion for a New Trial

Finally, defendant contends that the trial justice overlooked and misconstrued material evidence and clearly erred in denying the motion for a new trial. Specifically, defendant contends that there was insufficient evidence to support the verdict because Jasmine was not a credible witness and, he argues, because the evidence established that defendant's confession was coerced and unreliable. The defendant also contends that the verdict is against the preponderance of the evidence and fails to do substantial justice between the parties.

"When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror, exercising 'independent judgment on the credibility of witnesses and on the weight of the evidence.'" State v. Heredia, 10 A.3d 443, 446 (R.I. 2010) (quoting State v. Imbruglia, 913 A.2d 1022, 1028 (R.I. 2007)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" Id. (quoting State v. Texieira, 944 A.2d 132, 140 (R.I. 2008)). "If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the

- 19 -

verdict should be affirmed and the motion for a new trial denied." Id. (citing State v. Snow, 670 A.2d 239, 244 (R.I. 1996)).

In this case, the trial justice considered the evidence, independently assessed the credibility of the witnesses and the weight of the evidence, and concluded that he would have reached the same result as the jury on the guilty counts.[13] Because the trial justice agreed with the jury, his analysis was complete. See State v. Staffier, 21 A.3d 287, 290 (R.I. 2011) ("If the trial justice agrees with the jury's verdict, the inquiry is complete and the motion for a new trial should be denied."). To the extent that the defendant argues that a new trial should be granted based on an error of law by the trial justice, that argument was not presented below; therefore it is waived. See Bido, 941 A.2d at 828-29 ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court."). The defendant's motion for a new trial raised three grounds: "Said verdict is against the law"; "Said verdict is against the evidence"; and "Said verdict is against the law, the evidence and the weight thereof." None of these grounds alleged that a new trial should be granted because the trial justice committed an error of law by not suppressing the confessions. Stating that the verdict is "against the law" is a general challenge addressing the conformity of the evidence to the law in the case; it is not an argument that a specific ruling constituted an error of law requiring a new trial. Therefore, the trial justice did not err by denying the defendant's motion for a new trial.

**Conclusion**

For the reasons stated above, we affirm the trial justice's denial of the motion for a new trial and discern no error arising from his evidentiary rulings. However, we remand the case to the Superior Court in order for the trial justice to make additional findings of fact and credibility

---

[13] The trial justice stated that he may have found defendant guilty on all eight counts.

- 20 -

determinations concerning the voluntariness of the defendant's confessions. The trial justice may permit additional evidence or decide this issue based on the current record. If the trial justice concludes that the motion to suppress should be denied, the trial justice should enter an order to that effect and the convictions shall stand as affirmed, subject to any appeal concerning that ruling by the trial justice. If the trial justice decides to grant the motion to suppress, then he shall vacate the defendant's convictions and conduct a new trial without the confessions.

The papers in this case may be remanded to the Superior Court.

**Justice Flaherty, with whom Justice Robinson joins with the exception of footnote seven, dissenting in part and concurring in part.** I respectfully dissent from that part of the Court's opinion remanding this case to the trial justice for "additional findings of fact and credibility determinations regarding the first interview," but also leaving the trial justice with the discretion to allow further testimony. In my opinion, the remand should be limited to fact-finding and credibility determinations based solely on the record of the suppression hearing.

To support its mandate, the majority cites four previous holdings of this Court. However, after reviewing those decisions, it is my opinion that each is either inapposite or otherwise does not supply a foundation for the majority's reasoning. I agree with the majority that the remand should be for the limited purpose of requiring the trial justice to make findings of fact and a conclusion as to the issue of voluntariness based on the totality of the circumstances. However, none of the cases cited by the majority opinion supports reopening a hearing that already has occurred and that has been concluded. In contrast, those decisions support remanding for an evidentiary hearing when an error by the trial justice prevented a hearing from being held in the first instance. Because the parties in this case were afforded a full hearing, during which they were free to present and question any witness whom they wished to present or question, the remand in this case should prohibit the taking of new evidence rather than leaving the definition of the scope of the remand to the trial justice's discretion.

The majority cites Andrews v. Langlois, 105 R.I. 456, 252 A.2d 450 (1969); however, in that case, this Court, when it reviewed the denial of a petition for a writ of habeas corpus, vacated a defendant's conviction because the trial justice never made a preliminary determination that a confession was voluntary but instructed the jury that "even if the confession were not petitioner's free act and deed, the jury had a right to weigh the confession as to its truth

- 22 -

or falsity. This was an erroneous statement of the law." Id. at 461, 252 A.2d at 453. Thus, in light of the erroneous instruction, the Court concluded that a new trial would be necessary. Id. at 461, 252 A.2d at 454. Significant to this case, the Court in Andrews said that, but for the egregiousness of the faulty instruction, the appropriate remedy would have been a remand to the trial court for a hearing limited solely to the voluntariness of the confession because such a hearing had never been held. See id.

In State v. Brown, 468 A.2d 914 (R.I. 1983), the primary issue before the Court was the presence or absence of probable cause to arrest the defendant. The defendant argued that his confession should have been suppressed, not because it was involuntary, but because there was no probable cause to arrest him in the first place. Id. at 914. However, during a hearing to suppress the confession on that ground, the trial justice sustained an objection because a question posed to a police officer by the prosecutor called for a hearsay response. Id. Reasoning that probable cause may be established by hearsay evidence and determining that it could not consider the appeal based on a record that was restricted by the erroneous evidentiary ruling, the Court remanded the case to the trial court "for an evidentiary hearing and for findings of fact on the issue of probable cause for Brown's arrest." Id. at 915. Brown bears little resemblance to the considerations before the Court in this case.

The issue before the Court in State v. Mastracchio, 672 A.2d 438 (R.I. 1996), was whether a search was reasonable under the knock-and-announce rule or, in the alternative, whether the search violated the defendant's rights under the Fourth Amendment to the United States Constitution. Id. at 442. The case was remanded to the trial justice with directions that he "enter findings of fact and to make the determination in the first instance of whether the unannounced entry by police was reasonable under the Fourth Amendment." Id. at 443. The

Court did not direct that an evidentiary hearing be held or that the record be expanded in any way. Id.

Finally, in State v. Verrechia, 766 A.2d 377 (R.I. 2001), the fourth case cited by the majority, the Court addressed the appeal of a criminal defendant who argued that the fruits of a search of a garage that he leased should be suppressed. Id. at 380. In that case, the trial justice declined to address the merits of the defendant's motion to suppress because he found that the defendant had no expectation of privacy in the searched premises. Id. This Court disagreed, and it remanded the case for a "determination of whether the garage search violated [the defendant's] constitutional rights against unreasonable searches and seizures * * * ." Id. at 381. In Verrecchia, a new hearing on remand was required, because, based on his finding of no expectation of privacy, the trial justice had declined to afford a hearing to the defendant on the propriety of the search. Id. at 384.

The four just-discussed cases are simply not sufficiently analogous to the situation that confronts us in our consideration of this appeal. Here, a full hearing was conducted, and the parties had ample opportunity to develop the record. The difficulty here, as the majority has correctly pointed out, is that the trial justice did not make the appropriate credibility determinations and findings of fact before he determined that the state had proved that defendant's confession was voluntary by clear and convincing evidence.

In my opinion, to reopen the suppression hearing and allow an expanded evidentiary hearing, in effect to allow a "do over" or "second bite at the apple," is manifestly unjust. There is a substantial body of law that supports this position.

In Southern v. State, 807 A.2d 13, 15 (Md. 2002), the Court of Appeals of Maryland held that "it was improper for the Court of Special Appeals to remand and reopen the suppression

proceeding in order to provide the [s]tate with a second opportunity to present new evidence on the constitutionality of the initial stop." In Southern, the defendant had filed a motion to suppress; at the hearing on that motion, evidence was presented about an interrogation and a post-apprehension show-up identification. Id. at 15-18. However, the prosecution failed to present any evidence that would justify the initial traffic stop. Id. at 17. The intermediate appellate court held that the trial judge had ruled on the other issues, but "fail[ed] to rule on the issue of the propriety of the initial stop." Id. at 18. In Maryland, remand of appellate cases is governed by a specific rule of appellate procedure,[1] but the Court of Appeals said that the rule was "neither an 'antidote' for the errors of the [s]tate or of counsel nor a method to correct errors committed during the trial itself." Id. at 19. The Southern court thus concluded that the intermediate appellate court erred when its remand allowed for the presentation of additional evidence, pointing out that "[t]he purpose of the remand was not to correct a procedural error, but to afford the [s]tate an additional opportunity to do that which it previously failed to do—

---

[1] I disagree with the majority that Maryland's rule makes that jurisdiction an outlier. Rule 8-604 of the Maryland Rules provides in pertinent part:

> "(d) Remand. (1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

Despite the fact that remand in Maryland is addressed by a specific rule, a review of that rule leads me to conclude that that state's treatment of remand does not depart significantly from generally accepted principles regarding remand.

present evidence on the initial [traffic] stop." Id. at 21.[2] The court therefore reversed and ordered a new trial. Id. at 24.

In 2004, the Maryland Court of Special Appeals treated as settled law the fact that a remand following a trial judge's failure to make findings of fact when denying a motion to suppress a confession is cured by a remand for findings, without the taking of additional evidence. Perez v. State, 841 A.2d 372, 386 (Md. Ct. Spec. App. 2004) ("[I]f the problem were only a lack of specific findings, an option that we would have to address is whether to remand, without vacating the convictions, for the court to make findings on the existing record." (citing Southern v. State, 807 A.2d 13 (Md. 2002) (emphasis added)).[3]

The Wyoming Supreme Court remanded a case in which a trial judge articulated no findings of fact or conclusions of law, but the remand similarly was for the limited purpose of an order to make the requisite findings and conclusions. Johnson v. State, 214 P.3d 983, 989 (Wyo. 2009). A new evidentiary hearing was not permitted; the Supreme Court reasoned that it was the trial court's responsibility to make findings necessary to allow for appellate review. Id. at 986, 989.

The Alabama Supreme Court has held that remanding a case for the admission of new evidence in a reopened suppression hearing violated the Double Jeopardy Clause of the United States Constitution. Ex parte Hergott, 588 So. 2d 911, 912-15 (Ala. 1991) (citing Burks v. United States, 437 U.S. 1, 4 (1978)). There, a defendant challenged evidence that had been

---

[2] That court also noted that an order allowing the reopening of the suppression hearing invited the logical question: "'What if the [s]tate fails to perceive and meet its burden at the reopened suppression hearing?' Does it get another chance, and another chance?" Southern v. State, 807 A.2d 13, 21 n.4 (Md. 2002).

[3] The Perez court vacated the conviction at issue on other grounds. Perez v. State, 841 A.2d 372, 386 (Md. Ct. Spec. App. 2004).

seized, but the trial court denied his motion to suppress based on the "open field[s]" doctrine.[4] Id. at 912. The defendant entered a conditional guilty plea pending the appeal of the motion to suppress. Id. The intermediate appellate court was unable to determine whether the warrantless search overcame the presumption of unreasonableness, so it remanded the case to the trial court for a determination of whether the evidence was seized from within the curtilage of the home. Id. at 913.

After remand, the trial judge personally inspected the property and found that the evidence was seized from a location 100 yards from the defendant's house, and not seventy-five yards as a police officer had testified during the suppression hearing. Ex parte Hergott, 588 So. 2d at 913. Based on this new finding, the trial judge found that the evidence had not been discovered within the curtilage of the home, and he denied the motion to suppress. Id. However, because the defendant had entered a conditional plea of guilty, jeopardy had attached; the Supreme Court held that "[o]nce jeopardy has attached, the [s]tate is not given a second chance to supply evidence that it failed to provide on the first opportunity." Id. (citing Burks, 437 U.S. at 11). The court noted that the prosecution could have presented additional evidence at the initial hearing, but chose instead to rely on the testimony of a single officer. Id. at 914. Because the intermediate appellate court concluded that the state had failed to meet its burden during the suppression hearing, it reasoned that the case should not have been remanded. Id.

Several decisions of United States Circuit Courts of Appeals similarly favor limited remands rather than the reopening of suppression hearings. See, e.g., United States v. Fields,

---

[4] "The 'open fields' doctrine, first enunciated by th[e Supreme] Court in Hester v. United States, 265 U.S. 57 (1924), permits police officers to enter and search a field without a warrant." Oliver v. United States, 466 U.S. 170, 173 (1984). However, "the area 'immediately surrounding and associated with the home'" is called the curtilage and is protected as "part of the home itself for Fourth Amendment purposes." Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting Oliver, 466 U.S. at 180).

371 F.3d 910, 917 (7th Cir. 2004); United States v. Kithcart, 218 F.3d 213, 219-21 (3d Cir. 2000). In Kithcart, 218 F.3d at 219, a suppression hearing was held, after which the trial judge determined that there was probable cause to seize a gun from an automobile. Id. at 215-16. On appeal, the Third Circuit held that there was insufficient evidence to warrant probable cause, holding that the trial judge had relied on the vehicle's occupants' race and certain imprecise similarities between the stopped car and the suspects' car. Id. at 216-17. As a result, the court remanded for a consideration of whether there had been reasonable suspicion that would have supported an investigative stop. Id. at 217.

On remand, the trial judge reopened the suppression hearing and allowed more evidence, including testimony by officers who had been involved in seizing the evidence but who had not testified at the first hearing. Kithcart, 218 F.3d at 218. After the hearing ended, the trial judge ruled that the stop had been justified, and he refused to suppress the evidence, sparking a second appeal. Id. at 218-19.

When the case again came before the Third Circuit, the court relied on an earlier case in which it held "that the question of whether the government may augment the record at a suppression hearing after a remand is analogous to the question of whether the government may reopen its case after resting." Kithcart, 218 F.3d at 219 (citing United States v. Vastola, 915 F.2d 865, 876 (3d Cir. 1990)). The only reasons that the Third Circuit offered as potentially overcoming courts' "extreme[] reluctan[ce]" to reopen suppression hearings were situations in which the "evidence was either newly discovered or [previously] unavailable."[5] Id. at 219, 220. In determining that the remand should have been limited to the existing record, the court noted

---

[5] Although the majority rests on a sentence saying that "[s]uch decisions are traditionally within the discretion of the district court," Kithcart is clear that the discretion should be exercised in extremely limited circumstances, none of which is present here. See United States v. Kithcart, 218 F.3d 213, 220 (3d Cir. 2000).

that, at the first hearing, the state had chosen not to offer the testimony of the officer who actually made the traffic stop, that it failed to offer an explanation of why the evidence was not presented at the first suppression hearing, and that it produced "nothing to suggest that evidence was either newly discovered or unavailable during the first hearing." Id. at 220. As the court explained, "[n]ot surprisingly, the government's new testimony nicely filled the lacunae of the first hearing" and "neatly spackled over each of the cracks in the foundation of proof that [the Third Circuit] pointed out" in the first appeal. Id. at 218.

In Fields, 371 F.3d at 912-13, the Seventh Circuit considered the denial of a motion to suppress a gun after hearing testimony about how officers had gained entry into an apartment. When the trial judge denied the motion to suppress, she nonetheless said that she "would 'not disguise [her] skepticism about the sequence of events as testified to by [a police officer]," who was the only officer who testified as to the method of entry. Id. at 913. However, because the trial judge failed to make findings as to the officers' initial entry into the apartment, the Seventh Circuit remanded, stating that "[a]bsent a compelling reason otherwise, these determinations [of the constitutionality of a search and the extent of the exclusionary rule] should be based on the existing record and limited to the testimony and other evidence already presented." Id. at 913, 917.

In this case, it is my firm opinion that the remand should be channeled by the existing record of the suppression hearing. I agree with those courts that have held that the state should have only one opportunity to present the evidence that is necessary to meet its burden. The considerations in Kithcart, 218 F.3d at 219-21, are similar to those confronting us here. In Kithcart, the officer who actually made the traffic stop did not testify at the suppression hearing and nothing suggested that any post-remand evidence was "either newly discovered or

unavailable during the first hearing." Id. at 220. In this case, Det. LaBreche, whose conduct is being scrutinized, did not testify at the suppression hearing, but the state has not argued that there was any reason why he could not have done so.[6] Nor is there any indication that there is any evidence that is now available that was not available when the motion to suppress the confession was heard.

The only apparent purpose for allowing additional testimony would be to remedy the lack of evidence about what happened when the defendant incriminated himself prior to the recording of the second confession. In my opinion, if the trial justice is unable, based upon the record of the suppression hearing, to find that, under the totality of the circumstances, the confession was voluntarily made, then the confession should be suppressed. Any shortcomings or inadequacies should not be washed over with a reopened hearing. By the same token, if the trial justice finds that the confession was voluntary, based on that same existing record, then the defendant's decision not to testify or to present any evidence at the suppression hearing of the alleged coercion may prove to have borne fateful consequences.[7]

---

[6] Both Det. LaBreche and defendant testified at trial about the circumstances surrounding the confession.

[7] This case is a textbook example of the inherent difficulties that are present with an unrecorded confession. In State v. Barros, 24 A.3d 1158 (R.I. 2011), I dissented in part because I am of the firm opinion that confessions should be recorded. At the time of that decision, fourteen states and the District of Columbia required that confessions be recorded. Id. at 1187 (Flaherty, J., dissenting in part and concurring in the result). Since then, our sister states of Arkansas and Connecticut have joined the growing group of states that have obligated the recording of confessions or required the heavy scrutiny of confessions that were not recorded. See Ark. R. Crim. P. 4.7 (allowing the lack of recording to be considered when determining the admissibility of a custodial statement); Conn. Gen. Stat. Ann. § 54-1o(b) (West 2014) (presuming that an unrecorded custodial statement is inadmissible). In New Hampshire, the Supreme Court held that confessions, when recorded, must be recorded in their entirety. State v. Barnett, 789 A.2d 629, 632 (N.H. 2001).

In this day and age, a person cannot avoid being videotaped when he enters an office building or retail establishment, or even when he cashes a check. That being the case, it is

perplexing to me that he can confess to a capital crime without the benefit of having his statement recorded, even when the necessary equipment is readily available.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. Mustapha Bojang

**CASE NO:**              No. 2010-361-C.A.
                         (P1/09-1119A)

**COURT:**               Supreme Court

**DATE OPINION FILED:**  January 30, 2014

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                         Associate Justice William E. Carnes, Jr.

**ATTORNEYS ON APPEAL:**

                         For State:   Lauren S. Zurier
                                        Department of Attorney General

                         For Defendant:  Kara J. Maguire
                                        Office of the Public Defender