**Supreme Court**

No. 2014-251-C.A.
(P2/13-3785AG)

State                          :

v.                          :

Jose Lopez                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | |
| v. | : | |
| Jose Lopez. | : | |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, Jose Lopez, appeals to the Supreme Court from a judgment of conviction after a jury trial held in the Superior Court for Providence County.  He was found guilty of the following counts: Count One, assault with a dangerous weapon on Jorge Semidey, in violation of G.L. 1956 § 11-5-2; Count Two, assault with a dangerous weapon against Maribel Bonet-Perez, in violation of § 11-5-2; Count Three, carrying a pistol without a license, in violation of G.L. 1956 § 11-47-8(a); Count Five, the discharge of a firearm while committing a crime of violence, in violation of § 11-47-3.2(b)(2); and Count Six, the use of a firearm while in the commission of a crime of violence, in violation of § 11-47-3.2(a).  On appeal, the defendant contends that the trial justice erred in denying his motion for a new trial.  More specifically, he argues that the trial justice overlooked or misconceived material evidence when he determined that the weight of the evidence supported the convictions because, in the defendant's view, two key witnesses were not credible and the forensic evidence failed to conclusively link him to the shooting at issue.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

On December 18, 2013, a criminal information was filed charging defendant with: Count One, assault with a dangerous weapon on Jorge Semidey, in violation of § 11-5-2; Count Two, assault with a dangerous weapon constituting domestic violence against Maribel Bonet-Perez, in violation of § 11-5-2 and G.L. 1956 § 12-29-5; Count Three, carrying a pistol without a license, in violation of § 11-47-8(a); Count Four, assault and battery, in violation of § 11-5-2; Count Five, discharging a firearm while committing a crime of violence, in violation of § 11-47-3.2(b)(2); Count Six, using a firearm while in the commission of a crime of violence, "to wit, assault with a dangerous weapon," in violation of § 11-47-3.2(a); Count Seven, assault with intent to commit murder, in violation of § 11-5-1; Count Eight, using a firearm while in the commission of a crime of violence, "to wit, assault with intent to commit murder," in violation of § 11-47-3.2(a); and Count Nine, discharging a firearm within the compact part of the City of Providence, in violation of § 11-47-50. The state dismissed Counts Four, Seven, Eight, Nine, and the domestic element of Count Two, pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. The defendant's trial began on March 3, 2014 and continued on March 4, 6, and 7. We recount below the salient aspects of the trial.

## A

## The Testimony of Maribel Bonet-Perez

Maribel Bonet-Perez testified that, on December 1, 2012 (the date of the events that led to defendant's being criminally charged), she was living in the Chad Brown Housing Complex in Providence. She stated that she had met Mr. Lopez on November 3, 2012 and that the two had become "boyfriend/girlfriend." She further testified that she and defendant were "together" for

about three weeks or a month before she broke up with him in order to "[go] back to [her] husband," which is how she referred to Jorge Semidey.[1] She next testified that she and defendant thereafter resumed their relationship, but that she subsequently broke up with him for a second time. She further testified that Mr. Semidey and defendant did not know one another, but that she had told defendant about Mr. Semidey.

It was the further testimony of Ms. Bonet-Perez that, between her second break-up with defendant and December 1, 2012, the two of them had communicated by cellphone. She testified that she spoke to defendant by phone on the afternoon of November 30 and that, in that conversation, he indicated to her that he was unwilling to have their relationship come to an end. She added that defendant requested that she come to a particular restaurant where he was located, and she stated that she complied with that request. Ms. Bonet-Perez said that she was accompanied on her drive to the restaurant by her cousin, Damaris Torres. She stated that, upon arriving at the restaurant, she and Ms. Torres remained in the car, while defendant stood outside the vehicle as he spoke with her. Ms. Bonet-Perez said that she and defendant talked for about five minutes and that she then left.

Ms. Bonet-Perez testified that, accompanied by Ms. Torres, she then returned home, where the two women changed in order to get ready to go "clubbing" as they had previously planned. Ms. Bonet-Perez stated that, after 10:00 p.m. that evening, she and Ms. Torres drove to a club in Providence. Ms. Bonet-Perez said that she saw defendant at that first club, but that they did not speak; she added that she left the club as soon as she saw him.

Ms. Bonet-Perez testified that she and Ms. Torres then went to a second club, where they remained until its closing, which she estimated to have been at around 1:45 a.m. on December 1.

---

[1] In spite of her use of the word "husband" in her testimony, Ms. Bonet-Perez testified that she and Mr. Semidey were not legally married.

She said that, after leaving the second club, she and Ms. Torres drove back to her home; she added that, once there, the two women remained in the car for ten minutes, during which time, Jorge Semidey arrived and asked to go into her residence in order to retrieve some belongings he had left there. Ms. Bonet-Perez testified that while Mr. Semidey was in the residence, defendant unexpectedly pulled up behind her car, which he approached and began to pull her out. She added that she volunteered to get out of the car and "went with him as he was pulling [her]." She described defendant as being "mad;" and she said that, after pulling her from the car, he took a gun out.

Ms. Bonet-Perez further testified that an argument ensued between defendant and her behind her car and that the situation started escalating, culminating in defendant firing a gunshot "[t]o the floor." She stated that, after defendant started shooting, Mr. Semidey came out of the house, and he tried to calm him down, at which time Mr. Lopez fired his gun again, this time striking Mr. Semidey. She further stated that Mr. Semidey fell, but then got up to try to speak again to defendant, who continued shooting. She said that she could tell that Mr. Semidey had been struck by a bullet because he was bleeding. She testified that, in the same time frame, defendant pointed the gun at her head and neck, as well as at her armpit and stomach. She added that, while defendant had the gun pointed at her, she heard a "click" as he pulled the trigger a couple of times, causing her to feel "scared" and fearful that she was "going to die."

Ms. Bonet-Perez further testified that, after Mr. Semidey had been shot and defendant had pointed the gun at her, he began walking away. She stated that she then helped Mr. Semidey into her car and drove a short distance to a nearby parking area, where she encountered the police, to whom she provided a description of defendant.

# B

## The Testimony of Damaris Torres[2]

Damaris Torres testified that she knew of Jose Lopez and had seen him on multiple occasions prior to December 1, 2012. Whereas Ms. Bonet-Perez testified that Ms. Torres arrived at her home in the afternoon of November 30, Ms. Torres testified that it was around 7:00 p.m. on that date when she went there. In addition, Ms. Torres made no mention of having gone to a restaurant with Ms. Bonet-Perez that afternoon or having seen defendant at such an establishment.

Although Ms. Bonet-Perez testified that she and Ms. Torres had planned to "go out" on the night of November 30, Ms. Torres said that she had not been planning to do so, but then agreed to accompany Ms. Bonet-Perez. She stated that the two women went to two clubs, but she did not testify to having seen Mr. Lopez at either club.

Ms. Torres testified that, after leaving the second club, the two women returned to Ms. Bonet-Perez's home. She further testified that, after returning there, she and Ms. Bonet-Perez remained in the car for a short time, during which time Ms. Bonet-Perez received a phone call from Mr. Semidey. In contrast with Ms. Bonet-Perez's testimony, Ms. Torres's testimony contained no mention of Mr. Semidey arriving at the house at that time. She stated that, while they were in Ms. Bonet-Perez's car, a car in which defendant was a passenger parked directly behind them. She said that, seconds after Ms. Bonet-Perez told her that defendant was parked behind them, he appeared at the car door and threatened Ms. Bonet-Perez, saying: "'If you don't

---

[2] Since the focus of defendant's challenge to the denial of his motion for a new trial is on what he characterizes as "inconsistencies" between the testimonies of Ms. Bonet-Perez and Ms. Torres, we shall depart from our usual practice by pointing out some of those testimonial differences in the course of summarizing the testimony of Ms. Torres.

get out of the car, I'm going to kill you.'" She added that defendant removed Ms. Bonet-Perez from her car and pointed a gun at her head.

Ms. Torres testified that, as Mr. Lopez removed Ms. Bonet-Perez from the vehicle and threatened her, Ms. Torres ran and hid behind a nearby vehicle and contacted the police by cellphone. She testified further that she then saw Mr. Semidey approaching the parking lot on foot, but she did not say where he was coming from. Ms. Torres then stated that defendant pointed the gun at Mr. Semidey, "pulled the trigger[,] and shot him." She added that she saw Mr. Semidey collapse and heard him say: "'He shot me.'" She said that she realized that his knee had been hit because he had blood on his leg.

### C

### The Testimony of Patrolman Eric Chabot

Eric Chabot, a patrolman with the Providence Police Department, was also a witness at the trial. He testified that he was called to the Chad Brown Housing Complex around 2:30 a.m. on December 1, 2012. He further testified that, as he was traveling down Chad Brown Street, he observed a "Spanish male" in a black leather coat, who matched the description of defendant that had been broadcast. He stated that he saw defendant pull a firearm from his waistband and "drop it down his left side." He said that another officer then got out of his patrol car and tackled defendant, who was then immediately placed in custody.

### D

### The Testimony of Patrolman David Perez

Providence Police Patrolman David Perez also provided testimony at trial. He testified that, on December 1, 2012, he received a message from dispatch directing him to the Chad Brown Housing Complex because someone had been shot. He further testified that, after

arriving at the housing complex in his vehicle, he saw a black Nissan Maxima speeding towards him, which he proceeded to cut off. It was his testimony that a male and female "jumped out of the vehicle" and that the female driver screamed that her passenger had been shot. He added that she described the shooter as being a "short Hispanic male with a dark jacket." Officer Perez further stated that, while the female driver was describing the shooter, "she turned and looked behind her and shouted, 'That's him.'" He said that he then observed, "a short, Hispanic-looking male [who he] believed had a black leather jacket on."

**E**

**The Testimony of Dennis Lyons**

Dennis Lyons testified as an expert in firearms analysis; he indicated that he had performed an analysis of the evidence seized at the scene of the shooting.[3] He stated that, in conducting his analysis, he examined class characteristics, which are the "features that are predetermined by a manufacturer," and individual characteristics, which comprise "such things as use, abuse, [and] rust" that leave identifying marks. He testified that the result of his examination of the gun seized by the police and the bullet fragments collected at the scene of the shooting was "inconclusive," which he said means that the individual characteristics were insufficient for an expert to determine whether the fragments were fired from the weapon in question.

---

[3]    Ralph Costantino, a detective in the Bureau of Criminal Identification of the Providence Police Department, testified at trial that he seized eight nine-millimeter casings from the scene of the shooting as well as the gun from that area.

# F

## The Verdict and Subsequent Motion for New Trial

On March 7, 2014, the jury returned a verdict finding defendant guilty of all five Counts that had been submitted to it. The trial justice eventually sentenced Mr. Lopez as follows: on Counts One and Two, two twenty-year terms, to be served consecutively; on Count Three, ten years, to be served concurrently with Count Two; on Count Five, twenty years without the possibility of parole, to be served consecutively to Counts One, Two, and Three; and, on Count Six, ten years without the possibility of parole, to be served consecutively to all other Counts.

The defendant moved for a new trial. On March 19, 2014, a hearing was held on that motion, after which the trial justice denied it. The defendant then filed a notice of appeal.

# II

## Standard of Review

A motion for a new trial may be predicated on the grounds that the "weight of the evidence was not adequate to convict" a defendant. State v. Fleck, 81 A.3d 1129, 1133 (R.I. 2014). When addressing a motion for new trial which posits that the weight of the evidence was inadequate to support a conviction, the trial justice "act[s] as a thirteenth juror, exercising independent judgment on the credibility of witnesses and on the weight of the evidence." Id. (internal quotation marks omitted). The trial justice must engage in a three-step analysis which requires that he or she: "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." Id. at 1134 (quoting State v. Heredia, 10 A.3d 443, 446 (R.I. 2010)). After completing that three-step analytical process, "if the trial justice agrees with the jury's verdict or if the evidence is such that

reasonable minds could differ as to the outcome, the motion for a new trial should be denied." State v. Gonzalez, 56 A.3d 96, 102 (R.I. 2012) (internal quotation marks omitted). If the trial justice does not agree with the jury's verdict or "does not agree that reasonable minds could differ as to the proper disposition of the case," then the trial justice must take a fourth analytical step in which he or she "determine[s] whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." Id. (internal quotation marks omitted); see also State v. Hie, 93 A.3d 963, 975 (R.I. 2014); State v. Robat, 49 A.3d 58, 71 (R.I. 2012); State v. Adefusika, 989 A.2d 467, 480 (R.I. 2010).

When a defendant appeals the denial of a motion for a new trial, he or she "bears the burden of convincing this [C]ourt that the trial justice did not conscientiously apply these standards." State v. Garrett, 91 A.3d 793, 800 (R.I. 2014) (internal quotation marks omitted); see also Adefusika, 989 A.2d at 476.

This Court has previously stated that, with respect to a trial justice's ruling on a motion for new trial, the "record should reflect a few sentences of the [trial] justice's reasoning on each point." Hie, 93 A.3d at 975 (internal quotation marks omitted); see Garrett, 91 A.3d at 800; Robat, 49 A.3d at 71. The trial justice is not required to "refer to all the evidence supporting the decision; rather, he or she need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied the appropriate standards." Robat, 49 A.3d at 71 (emphasis in original) (internal quotation marks omitted); see Hie, 93 A.3d at 975; Gonzalez, 56 A.3d at 102.

When this Court reviews the denial of a motion for new trial, "[i]f the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." Garrett, 91 A.3d at 800

(internal quotation marks omitted). We apply this deferential standard of review because "a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." Gonzalez, 56 A.3d at 103 (internal quotation marks omitted); see State v. Clay, 79 A.3d 832, 842 (R.I. 2013) (noting that this Court is deferential to a trial justice's credibility determinations and does "not focus on whether this Court simply agrees or disagrees with the trial justice's credibility determinations") (internal quotation marks omitted); see also Hie, 93 A.3d at 975 ("[T]his Court affords a great deal of respect to the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record.") (internal quotation marks omitted).

## III

### Analysis

On appeal, Mr. Lopez argues that the trial justice erred in denying his motion for a new trial because, in his view, the state's two key witnesses, Ms. Bonet-Perez and Ms. Torres, gave "such conflicting and contradictory testimony that it was not reasonable for any jury to believe [them]." Mr. Lopez also contends that "it was impossible to attach much significance to the fact that Mr. Lopez happened to be carrying a 9 mm caliber weapon and the cartridge cases found at the scene could have been discharged from a 9 mm, firearm among others."

It is clear to us from the record that, in passing upon defendant's motion for a new trial, the trial justice conducted the requisite three-step analytical process. See Gonzalez, 56 A.3d at 102; Adefusika, 989 A.2d at 480.

The trial justice completed the first step in the analysis by considering the evidence in light of the jury charge. See State v. Rosario, 35 A.3d 938, 948 (R.I. 2012). He summarized the testimony of Ms. Bonet-Perez and Ms. Torres relative to the events of November 30 and December 1. Specifically, the trial justice stated that the evidence showed that defendant shot Mr. Semidey in the leg and pointed a gun at various parts of Ms. Bonet-Perez's body while pulling the trigger more than once.

Next, the trial justice completed the second step of the analysis by independently assessing the credibility of the witnesses and weighing the evidence. See Hie, 93 A.3d at 976. The trial justice explicitly noted that there were "some discrepancies between the two women's testimony," but he nevertheless concluded that "those discrepancies or inconsistencies [did] not diminish * * * the weight or the significance of their testimony." Furthermore, the trial justice noted that both Ms. Bonet-Perez and Ms. Torres had "categorically, unequivocally, unhesitatingly said that this defendant shot Jorge Semidey." The trial justice concluded that the state's witnesses were "wholly credible and forthright."

With respect to the third step in the analysis, the trial justice characterized the jury's verdict as "well warranted." He then denied defendant's motion for a new trial and moved on to sentencing. See Gonzalez, 56 A.3d at 104.

We turn now to Mr. Lopez's specific contentions on appeal. He argues that the trial justice erred in finding Ms. Bonet-Perez and Ms. Torres credible in view of what he characterizes as inconsistencies in their testimony at trial. The following are the purported inconsistencies in the testimony to which he points:

- Ms. Bonet-Perez testified that her cousin arrived at her home in the afternoon of November 30, whereas Ms. Torres testified that she did not arrive until 7:00 p.m. that evening.

- Ms. Bonet-Perez testified that Ms. Torres was with her when she saw defendant on the afternoon of November 30, whereas Ms. Torres provided no such testimony.
- Ms. Bonet-Perez testified that the two women had planned to go "clubbing" on the evening of November 30, while Ms. Torres made no reference to such a plan and instead testified that she simply agreed to accompany her cousin in going out.
- Ms. Bonet-Perez testified to having seen defendant at the first nightclub on the night in question, but Ms. Torres testified that she did not see defendant at that nightclub.
- Ms. Bonet-Perez testified that she was not expecting to see Mr. Semidey when she returned home from the nightclubs on December 1, whereas Ms. Torres testified that Mr. Semidey had called Ms. Bonet-Perez.
- Ms. Bonet-Perez testified that she spoke with Mr. Semidey when he arrived at her home and permitted him to enter her home, whereas Ms. Torres testified that she had not seen Mr. Semidey that evening until she saw him walking through a parking lot towards Ms. Bonet-Perez and defendant.
- Ms. Bonet-Perez testified that Mr. Semidey was coming from her home when he approached defendant, while Ms. Torres testified that she was unsure of where he was coming from.

Even if we were to concede arguendo that each of the just-summarized differences in the testimony of the two witnesses constituted actual inconsistencies, it would not preclude a determination that the witnesses were credible. See State v. Jensen, 40 A.3d 771, 781 (R.I. 2012) (citing various decisions of this Court in support of the proposition that "the presence of some inconsistencies between or among utterances of a witness or witnesses at different points in time does not ipso facto render the testimony unworthy of belief"); see also Rosario, 35 A.3d at 948, 949 (recognizing that, even when there are testimonial inconsistencies, it is not necessary to discredit all of the witness's testimony). Percipient witnesses often differ concerning some details about events in which they had some degree of involvement. Accordingly, it is clear to us that the trial justice had a basis for determining that, in spite of the fact that their recollections were not identical, the two witnesses were credible as to material issues such that their testimony could support defendant's conviction. In ruling upon Mr. Lopez's motion for a new trial, the

trial justice observed that there were "some discrepancies between the two women's testimony."[4] Nevertheless, these discrepancies did not require that the trial justice conclude that the witnesses are not credible; and, in fact, he determined that the two witnesses were credible with respect to the central issue—namely, whether defendant shot Mr. Semidey and "put[] the gun to [Ms. Bonet-Perez's] head, and her neck, and her side, [and pulled] the trigger multiple times."

With respect to the second purported inconsistency, the fact that Ms. Torres did not describe visiting defendant at the restaurant on the afternoon of November 30, is not necessarily inconsistent with Ms. Bonet-Perez's testimony because Ms. Torres was never directly questioned as to when she first saw defendant on November 30. And, with respect to the third purported inconsistency, it is entirely possible that the two women had different expectations as to how they would spend their time together on the night in question, even though they ultimately decided to "go out" together to clubs.

As we have previously remarked, when a defendant challenges a trial justice's credibility determinations, "[t]he mere fact that [a] defendant disagrees with the trial justice's conclusions about credibility is not a sufficient basis to warrant the granting of a motion for new trial." State v. Rivera, 987 A.2d 887, 903 (R.I. 2010). It is important to bear in mind that, as we have previously noted, a trial justice is physically present for the entirety of a trial and, accordingly, is "in an especially good position to * * * judge the credibility of the witnesses." Adefusika, 989 A.2d at 476 (quoting State v. Texieira, 944 A.2d 132, 141 (R.I. 2008)). It is noteworthy that the trial justice in this case expressly referred to his "vantage point as a front-row observer" in

---

[4]     We acknowledge that there are discrepancies in the first, fourth, fifth, sixth, and seventh testimonial passages to which defendant has directed our attention—although we consider each of those discrepancies to be of the "de minimis" variety.

- 13 -

passing upon defendant's motion for a new trial, and he found that Ms. Bonet-Perez and Ms. Torres were "credible and forthright." See id.[5]

Consequently, upon review of the record, this Court perceives no basis for concluding that the trial justice committed clear error or that he overlooked or misconceived material evidence relating to a critical issue in the case when denying the defendant's motion for a new trial. See State v. Virola, 115 A.3d 980, 990 (R.I. 2015); Rosario, 35 A.3d at 949.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.

---

[5] We recognize that defendant has also contended on appeal that "it was impossible to attach much significance" to the fact that defendant was carrying a weapon from which the cartridge cases found at the scene could have been discharged because the weapon could not be conclusively connected to those cartridge cases. However, the trial justice made no reference to the forensic evidence in his denial of defendant's motion for a new trial.

- 14 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

| | |
|---|---|
| **TITLE OF CASE:** | State v. Jose Lopez. |
| **CASE NO:** | No. 2014-251-C.A. <br> (P2/13-3785AG) |
| **COURT:** | Supreme Court |
| **DATE OPINION FILED:** | January 14, 2016 |
| **JUSTICES:** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **WRITTEN BY:** | Associate Justice William P. Robinson III |
| **SOURCE OF APPEAL:** | Providence County Superior Court |

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For State:   Virginia M. McGinn
                    Department of Attorney General

For Defendant:  Lara E. Montevalvo
                       Office of the Public Defender