**Supreme Court**

No. 2012-206-C.A.
(P2/10-2823A)

State

v.

Luis Barrios.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State

v.

Luis Barrios.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, Luis Barrios, was convicted by a jury on two counts of second-degree sexual assault, and he has appealed from that conviction.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the Superior Court's judgment of conviction.

**I**

**Facts and Travel**

On September 16, 2010, the state filed a criminal information charging defendant with two counts of second-degree sexual assault in violation of G.L. 1956 § 11-37-4 and one count of simple assault in violation of G.L. 1956 § 11-5-3.[1]

---

[1]     It is clear from the record that the simple assault charge related to the throwing of a cup of soda against the leg of the complaining witness.

In due course, a jury trial was held over five days in October and November of 2011. We summarize below the salient aspects of what transpired at that trial.

## A

## The Testimony at Trial

### 1. The Testimony of the Complaining Witness

The complaining witness, Anna,[2] testified that, on July 22, 2010, she went to a pub in North Providence at approximately 10 p.m. with friends; one of those friends was a woman to whom we refer as Cathy. It was the testimony of Anna that she shared two pitchers of beer with Cathy and another friend and that, in addition, she and Cathy each consumed a shot of alcohol. Anna further testified that, although Cathy left the pub earlier in the evening, she remained there until shortly before the closing of the establishment at 1 a.m. (i.e., early in the morning of July 23).

Anna testified that, upon leaving the pub, she commenced the approximately five minute walk back to Cathy's home at 43 George Street in North Providence, where she was then living. She responded in the affirmative when asked on direct examination whether, when she left the pub alone, she was "aware of [her] senses" and knew what was "going on around" her; and she responded in the negative when asked if she had experienced any difficulty with her vision or was "falling down." She testified that, as she was walking along George Street in an area which she described as being "well-lit," a dark colored car approached; she added that there were "some boys" in the car, which was "inching along" beside her. She further testified that the occupants of the car were "propositioning" her and saying "sexual things" to her. She stated that

---

[2]  In order to protect their privacy, we shall refer to the complaining witness by the pseudonym "Anna" and to her friend by the pseudonym "Cathy." See State v. Paola, 59 A.3d 99, 101 n. 2 (R.I. 2013); State v. Adefusika, 989 A.2d 467, 470 n. 1 (R.I. 2010).

she looked over at the car for "a second" and noticed that it contained two males—one in the passenger seat and the other in the driver's seat, both of whom were unknown to her. She also stated that she was able to see the faces of the two occupants of the car and that she "just kept walking away."

Anna further testified that she then "heard a car door" and that, while she was in front of 35 George Street (which she said was two houses away from Cathy's home), someone came up behind her and began walking alongside her. She stated: "I looked [at him]. He was talking to me, telling me that he wanted to take me home with him." She testified that the man said that he resided on George Street. She further testified that he was walking right next to her for approximately twenty seconds and that she concentrated on his face at that time. She stated that she recognized him as one of the males whom she had seen in the car; she added that his hair was "really spiked" and that he "looked like an Asian * * * ." It was further her testimony that she was "very nervous" and that she started walking faster. She described what happened next as follows:

> "[I] told him I didn't want anything to do with it. So he grabbed me by my crotch over my clothes and, so I broke away from him. He quickly grabbed me again, grabbed my chest. * * * I just started running really fast * * * ."

Anna then went on to testify that, when she reached Cathy's driveway, her attacker threw a Taco Bell cup containing soda at her, striking her on the back of her leg. Anna testified that she ran into Cathy's George Street home whereupon a call was placed to 911.[3] Anna stated that, when the police responded to the 911 call, she recounted the incident to them and provided a description of the person who she said had assaulted her. She testified that the police thereafter

---

[3]    A recording of the 911 call at 1:01 a.m. on July 23, 2010 was entered as a full exhibit at trial, over defense counsel's objection.

drove her to 35 George Street, where officers escorted a man (who, according to the testimony of Detective Frank DelSanto, was one Fernando Justiniano[4]) to the car and asked her if he was the person who had attacked her. It was her testimony that she told the police that he was not her attacker but that she had seen him in the car with the person who attacked her.

She stated that the police then took her to a residence on nearby Morgan Avenue in North Providence, where she observed the same car that had pulled up alongside her on George Street. She testified that the police then brought a man from the residence to the driveway; she stated that, even though the police shone a light on the man's face, she could not identify him from the place where the police car in which she was sitting was positioned. She further testified, however, that, when the police brought the man closer to the police car, she was able to identify him as her attacker. At trial, she identified a photograph of defendant's car and testified that it was the same car that had pulled up alongside her on the night of the incident at issue; she also identified a photograph of defendant as her attacker (the photograph having been taken on the morning of July 23), but she was not asked to identify him in court.

### 2.     The Testimony of Detective DelSanto

North Providence Det. Frank DelSanto testified that, on July 23, 2011, he was dispatched to 43 George Street for the purpose of investigating an alleged sexual assault. He testified that, upon arriving at that location, he spoke with Anna, whom he observed to be "hysterical," "shaking," and "very upset." He stated that, although he could detect "a small slight amount of alcoholic beverage on her breath," she did not have any difficulty speaking; he added that her speech was not slurred and that he could understand her.

---

[4]     The record indicates that Fernando Justiniano did not testify at trial. The defendant testified that Mr. Justiniano had left the country after he (defendant) was arrested and that his repeated attempts to contact Mr. Justiniano had been unsuccessful.

Detective DelSanto testified that Anna described the vehicle driven by her attacker. He further testified that she described her attacker as being an "Asian male" with "spiked hair," which was "heavily jelled [sic];" he also acknowledged that she answered in the affirmative when he asked her whether her attacker could have been Hispanic. Detective DelSanto testified that it was he who drove Anna to the George Street and Morgan Avenue addresses, and he corroborated her testimony with respect to her identification of defendant as her attacker (after he was brought closer to the police car), stating that she manifested "no hesitation."

The detective also stated that the police seized a Taco Bell cup from underneath a vehicle in Cathy's driveway. He described that driveway as having been "sandy" and the cup as having been "wet" and "squashed;" and he then stated that, "based on [his] training and experience with respect to surfaces and conduciveness of lifting prints," he decided not to have the cup fingerprinted because of "the poor quality of the cup." Detective DelSanto testified at trial that defendant was the same man as Anna had identified on July 23 as her attacker.

### 3. The Testimony of Defendant

The defendant, Luis Barrios, testified in his own defense. He testified that, at some point in time late on July 22, 2010 or early on July 23, 2010, he drove his car with his former friend Fernando Justiniano to a Taco Bell establishment. He further testified that, while he did not buy anything at the Taco Bell, Mr. Justiniano purchased both a meal and a soda; defendant added that he then proceeded to drive Mr. Justiniano to the latter's home at 35 George Street.

The defendant further testified that, while driving on George Street, after midnight, he saw a female, who he believed to be intoxicated, walking along the street. He stated:

> "When I stopped at the stop sign on the first half of George Street, a female approached my car and asked me, do I know you? * * * I kept driving past the stop sign."

The defendant further stated:

> "[Mr. Justiniano] told me, ask her if she wants a ride, ask her if she wants to come home with us. I looked at him like he was crazy. I asked him why would I ever do that, and he just kind of stood quiet."

It was defendant's testimony that he subsequently pulled the car into Mr. Justiniano's driveway and that, after Mr. Justiniano exited the car (taking his soda from Taco Bell with him), he returned home to Morgan Avenue. The defendant denied having sexually assaulted Anna.

The defendant also testified that, when the police arrived at his home approximately thirty to forty minutes after he went to bed, which he did shortly after arriving home, he was escorted by police officers to the "top of [his] driveway," where they shone a light on his face. He further testified that the police car was at the end of his driveway, roughly twenty feet from where he was positioned, and that he heard an officer step out of the police car and say, "She cannot I.D. him." It was additionally his testimony that he was then brought closer to the police car by the officers until he was roughly "three, three and a half feet" away from it; he stated that at that point he observed an officer sitting next to a woman whose hands were over her face and whose head was in her lap.[5] He testified that "one of the police officers whispered something in the woman's ear" and that he then heard an officer say "positive I.D." He further stated that he was "positive" that the woman did "not look at [him] for one second."[6] The defendant stated

---

[5] Detective DelSanto testified that he had instructed Anna to keep her head down and to then raise her head when he told her to do so. He stated: "At that point when [defendant was moved closer to the car], I said raise your head, look to the left, and that's when he was positively identified."

[6] Although defendant's testimony with respect to Anna's identification of him was corroborated by the testimony of his stepsister, the state called as a rebuttal witness North Providence Police Officer Christopher Puleo, who had observed Anna's identification of defendant at the latter's residence on Morgan Avenue. Officer Puleo's testimony was consistent with the testimony of both Anna and Det. DelSanto. He testified that Det. DelSanto was in the

that he was arrested at that time and that he then asked the police to fingerprint the Taco Bell cup which the police told him had been thrown at the complaining witness because he believed it might exonerate him.

A photograph of Mr. Justiniano and defendant taken in 2010, in which they are shown standing side by side, was entered into evidence at trial; after being shown that photograph, defendant testified that he and Mr. Justiniano appeared "not much different" from each other physically. He added that Mr. Justiniano was "maybe half an inch" taller than he and that, at the time of the alleged attack, both he and Mr. Justiniano wore their hair in the style which he characterized as a "Mohawk." He further stated that, early on the morning of July 23, 2010, he had been wearing "dark jeans, pants [sic], dress shoes, [and a] purple dress shirt" and that Mr. Justiniano had been wearing a white dress shirt and jeans. However, he proceeded to testify that, by the time that Anna identified him in his driveway, he had changed and was then wearing a white shirt and jean shorts. The defendant has consistently contended that Anna mistakenly identified him rather than Mr. Justiniano as her attacker. On appeal, defendant argues that they resemble each other physically—specifically, with respect to their "age, distinctive hair style, hair color, race, height, and weight." He also emphasizes that, when he was identified by Anna, he was wearing a white shirt, the same color shirt as Mr. Justiniano was wearing when defendant dropped him off at his home on the morning of July 23.

driver's seat of the police car. He stated that Det. DelSanto never exited the police car and that he did not see him whispering to Anna. He added that Anna was seated in the rear of the car by herself; he further testified that, although her head had been in her lap, there came a point in time when he saw her look up and identify defendant.

**B**

**The Verdict, the Motion for a New Trial, and the Sentencing**

On November 2, 2011, a jury found defendant guilty on Counts One and Two (both charging second-degree sexual assault), but it acquitted him on Count Three (charging simple assault).

Subsequently, on November 8, 2011, defendant moved for a new trial; defendant argued that the "most significant" fact giving rise to reasonable doubt as to his guilt was the absence of an in-court identification of him by Anna. The defendant argued that the testimony of Anna, Det. DelSanto, Officer Puleo, and Cathy was contradictory. He also contended that the police department's investigation of the incident was flawed in that the police had not fingerprinted the Taco Bell cup and had not conducted a side by side identification process. The defendant maintained that he was innocent and that, if anyone had attacked Anna, it was Mr. Justiniano. The trial justice ultimately denied defendant's motion. In due course, defendant was sentenced to concurrent three year terms of imprisonment on each of the two counts on which he had been found guilty; the trial justice ordered that the sentences be suspended, with probation.

The defendant filed a timely appeal to this Court. On appeal, defendant challenges only the trial justice's denial of his motion for a new trial.

**II**

**Analysis**

On appeal, defendant contends that the trial justice erred in denying his motion for a new trial because "reasonable minds could not differ regarding the evidence and the reasonable inferences drawn therefrom in this case" and because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that defendant was the person who sexually

assaulted Anna. The defendant submits that the evidence tended to establish that Mr. Justiniano was the "likely culprit," and defendant asserts that what he considers to be Anna's "misidentification" of him was caused by her consumption of alcohol and the similarity of his physical appearance to that of Mr. Justiniano.

When a trial justice considers a motion for a new trial, he or she "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." State v. Rosario, 35 A.3d 938, 947 (R.I. 2012) (internal quotation marks omitted); see also State v. Wray, 38 A.3d 1102, 1108 (R.I. 2012); State v. Morales, 895 A.2d 114, 121 (R.I. 2006). In carrying out that role, "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." State v. Silva, 84 A.3d 411, 416 (R.I. 2014) (internal quotation marks omitted); see also State v. Mitchell, 80 A.3d 19, 30 (R.I. 2013); State v. Perkins, 966 A.2d 1257, 1260 (R.I. 2009). If, after conducting that three-step process of independent review, "the trial justice agrees with the jury's verdict or determines that reasonable minds could differ, then the analysis is complete and the verdict should be affirmed." State v. Harrison, 66 A.3d 432, 445 (R.I. 2013) (internal quotation marks omitted); see also Rosario, 35 A.3d at 947; State v. DeOliveira, 972 A.2d 653, 665 (R.I. 2009).

This Court has "indicated that the record should reflect a few sentences of the [trial] justice's reasoning on each point." State v. DiCarlo, 987 A.2d 867, 870 (R.I. 2010) (internal quotation marks omitted). We have further stated that, "[i]n providing a rationale for a decision * * * the trial justice need * * * only cite evidence sufficient to allow this [C]ourt to discern

- 9 -

whether the [trial] justice has applied the appropriate standards." Id. (internal quotation marks omitted).

On appellate review, "[i]f the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." State v. Paola, 59 A.3d 99, 104 (R.I. 2013) (internal quotation marks omitted); see also State v. Clay, 79 A.3d 832, 842 (R.I. 2013); Harrison, 66 A.3d at 445.

It is clear to us that the trial justice in the instant case set forth and applied the correct standard in reviewing defendant's motion for a new trial. First, the trial justice considered the evidence presented at trial in light of the jury charge, giving special attention to the testimony of the complaining witness, Anna. The trial justice expressly acknowledged defendant's contention that this was a case of mistaken identity, and he recognized that "the verdict turned on the jury's assessment of the credibility of the complaining witness * * * [,] in particular, the reliability of her identification of Mr. Barrios as the person who assaulted her * * * ." In accordance with the second step in the process of analyzing a motion for a new trial, the trial justice then independently assessed the credibility of the witnesses and the weight of the evidence. The trial justice made comprehensive findings on the record setting forth his reasons for denying defendant's motion.

When addressing defendant's claim that Anna was intoxicated and thus could not identify him, the trial justice noted that "she insisted that despite her drinking, when this assault occurred, she was possessed of all her senses;" the trial justice found that insistence on her part to be corroborated by the testimony of Cathy and Det. DelSanto, as well as by the sound of Anna's voice on the 911 tape. The trial justice concluded that: "[N]either I nor the jury, apparently, was

persuaded that she had [drunk] to an extent that it rendered her perception of what occurred and who did it on the evening in question unreliable." With respect to Anna's identification of defendant, the trial justice stated that her identification of him was "unequivocal" and found as follows:

> "The defendant fits the description, particularly when you view the way he looked on the day of the incident as depicted by the photograph that was displayed on the screen and [Anna] identified. * * * [I]t may be a bit unusual that no in-court identification was proffered, but that doesn't change the fact that there was evidence that that was the photograph of Mr. Barrios and that was the way he looked on the evening in question."

The trial justice then considered the testimony of defendant and his stepsister with respect to the circumstances surrounding Anna's identification of defendant as her attacker at defendant's home on Morgan Avenue. He ultimately found the testimony of both defendant and his stepsister not to be credible, whereas he found the testimony of Detective DelSanto and Officer Puleo "in terms of their relating of what transpired at Morgan Avenue, to be credible and truthful."

The trial justice significantly concluded pursuant to the third step of his independent review that "reasonable minds could differ as to the defendant's guilt or innocence." Then, in accordance with well-established legal principles, the trial justice subsequently denied defendant's motion for a new trial. See State v. Guerra, 12 A.3d 759, 765 (R.I. 2011) (stating that if, after conducting the required analysis, "the trial justice * * * determines that, based upon the evidence, reasonable minds could differ as to the proper outcome, then the inquiry is at an end and the motion for a new trial should be denied") (internal quotation marks omitted).

In our judgment, the trial justice properly carried out his role as the metaphorical thirteenth juror, conducting the required three-step analysis before denying defendant's motion

- 11 -

for a new trial. Although defendant attempts to cast doubt on Anna's identification of him, importantly, the trial justice expressly found that, after considering Anna's alcohol consumption, the presence of street lights, her proximity to the assailant, and the description which she gave to the police, he was not persuaded that her perception of what had occurred was unreliable.[7] In rendering his decision, the trial justice reviewed all of the testimony and evidence at trial, and he ultimately found Anna to be credible. As we have noted, the trial justice concluded that "reasonable minds could differ" as to defendant's guilt and that, in his opinion, the jury's guilty verdict was "supported by the evidence."

This Court has stated on several occasions that we afford "a great deal of respect to the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." Paola, 59 A.3d at 106 (internal quotation marks omitted). Bearing in mind the deferential standard of review that governs our scrutiny of a trial justice's findings and conclusions in this context, we are unable to rule that the trial justice in this close and credibility-intensive case was either clearly wrong or that he overlooked or misconceived material and relevant evidence in his denial of the defendant's motion for a new trial. See Clay, 79 A.3d at 842; State v. Adefusika, 989 A.2d 467, 481 (R.I. 2010). Accordingly, we conclude that the trial justice properly denied the defendant's motion.

---

[7] This Court has discussed the relationship between witness credibility and witness reliability. See, e.g., State v. DiPetrillo, 922 A.2d 124, 139 (R.I. 2007); State v. Luanglath, 749 A.2d 1, 5 (R.I. 2000). We have specifically stated that, when ruling on a new trial motion, the trial justice "must also determine to what extent reliability affects the witnesses' credibility and what weight should be given to their testimony." Luanglath, 749 A.2d at 6. In the instant case, the trial justice laudably took into account the reliability factor while passing upon Anna's overall credibility.

## III

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's judgment of conviction. The record in this case may be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State v. Luis Barrios.

**CASE NO:**    No. 2012-206-Appeal.
(P2/10-2823)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    April 17, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For State:  Christopher R. Bush
Department of Attorney General

For Defendant:  Lara E. Montecalvo
Office of the Public Defender