**Supreme Court**

No. 2016-300-M.P.
(P1/08-1159A)

| State | : |
| :--- | :--- |
| v. | : |
| Joseph Ogoffa. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

   v.                             :

Joseph Ogoffa.                     :


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The defendant, Joseph Ogoffa, filed a petition for issuance of a writ of certiorari before this Court, seeking review of his January 9, 2014 conviction in Providence County Superior Court on five counts of first-degree child molestation, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2. On November 16, 2016, this Court granted his petition. The defendant contends that the trial justice erred in denying his motion for a new trial. He further posits that his "constitutional right to present a full and fair defense" was denied because the trial justice "unfairly limit[ed] his cross-examination of two witnesses."

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On April 11, 2008, defendant was charged by indictment with five counts of first-degree child molestation. A trial took place over four days in January of 2014.[1] We relate below the salient aspects of what transpired at that trial.

---

[1]    The defendant represents in his brief that the reason for the delay between the indictment and the eventual trial was the fact that he was living in Nebraska and was "unaware that he had been indicted."

# A

## The Testimony of Sarah[2]

Sarah, the complaining witness, testified that, at the time of trial, she was eighteen years old. She stated that, when she was six years old and in the first grade, her parents worked afternoon shifts and Sarah and her younger brother, Nicholas, would go to "Aunt [Pamela's]" house; Sarah added that Pamela was her mother's best friend.[3] Sarah testified that Pamela's mother, whom she called "Gramme," would babysit her at Pamela's house. She stated that she loved Pamela and Gramme.

It was Sarah's further testimony that, at the time in question, Pamela's son Joe (the defendant) was "old enough to be in high school or college" and that he did not come to Pamela's house "a lot." When asked to identify Joe at trial, Sarah identified defendant. It was her testimony that she remembered a time in September and October of 2001 when Joe came over to Pamela's house and "told [Sarah] to come with him to the bathroom." She stated that Gramme and Nicholas were in the living room at the time, but it was also her testimony that "sometimes" Gramme "do[z]e[d] off." She added that she told defendant "no" initially, but that she then did accompany him to the bathroom. Sarah stated that she was "[s]cared" because she "didn't really know who [defendant] was." It was further Sarah's testimony that, once inside the bathroom, defendant told her to lie down on the floor and that he proceeded to remove her pants and underwear. She testified that, after telling him to stop, she did not say anything further to him and did not scream because she was "scared." Her testimony was to the effect that

---

[2] We have employed pseudonyms in referring to the complaining witness (Sarah), her brother (Nicholas), her mother (Cathy), her father (Gerald), her cousin (Leslie), and defendant's mother (Pamela).

[3] It is clear from the record that Pamela was not a blood relative of Cathy or Sarah.

defendant then put his penis into her vagina. Sarah added that defendant then told her not to tell anyone. It was further Sarah's testimony that she did not tell Gramme or her own mother about what had happened in the bathroom because she was afraid of "[g]etting in trouble."

Sarah testified that, either the next day or a couple of days later, she was in the bathroom with defendant again and "the same thing happened." She added that she did not know why she went into the bathroom with defendant that second time. Sarah further testified that, on three further occasions, she was alone with defendant and "something happened." It was Sarah's testimony at trial that the third incident took place in a bedroom closet in Pamela's house because "[s]omebody was in the bathroom." It was her testimony that, on that third occasion, defendant "used his fingers." She also testified that the final two incidents took place in the bathroom and that defendant engaged in digital vaginal penetration on both of those occasions as well. Sarah's testimony reflected the fact that she did not reveal anything to anyone after any of the five incidents; she stated that she was afraid because "this was like a family, I guess." It was her testimony that she viewed defendant as a "family member;" and she answered in the affirmative when asked by the prosecutor if she "loved" defendant. Sarah testified that she continued to go to Pamela's house to be babysat for about a year after the assaults took place.

Sarah proceeded to testify that there did come a time, while she was twelve years old, when she told her cousin, Leslie, about the assaults. She stated that she made that revelation to Leslie because she had gotten "into an argument with [her] parents about them not letting [her] go out and hang with friends" and she "got frustrated." It was her testimony that she asked her cousin "to keep [her] secret;" she stated that her reason for so doing was that "it happened six years before[, and she] didn't want to still talk about it after [she] told her [cousin]." Sarah testified that, at the time of her disclosure to her cousin, Cathy (Sarah's mother) and Pamela were

- 3 -

no longer friends and had "drifted apart," although they still saw one another at church. She added that Cathy and Pamela had "drifted apart" because Sarah's father, Cathy's husband, "didn't like their friendship." In Sarah's words, "[h]e thought they were too close." It was further Sarah's testimony that her cousin told Sarah's "oldest brother" about the assaults and that Sarah's parents eventually found out. Sarah testified that she spoke to the police the day after her parents "confront[ed]" her with respect to the assaults. She added that, "[m]aybe like a day or two after" she gave her statement to the police, she went to see a doctor. She was then asked at trial if she was sure that "[e]ach and every time of the five times that the defendant took [her] into the bathroom or the closet * * * it was Joseph Ogoffa and not one of his brothers?" and she responded: "I'm positive."

On cross-examination, Sarah was confronted with the fact that she told the grand jury that the final assault was the one assault that took place in the closet—rather than it being the third assault which took place in the closet, as she testified at trial. She replied as follows:

> "When I was in front of the grand jury I was twelve years old and it was very nerve wracking and I was very nervous. * * * At twelve * * * I had never been in a situation like this before. I never stood in front of people that don't know who I am that don't know my story, so I did say that at twelve but I'm saying this now and I know what I'm saying."

She was also asked on cross-examination if there had been any blood in her underwear after the assaults, but she answered in the negative. She was further asked whether she told the doctors that the "fifth time was anally?" She responded: "No. Not that I recall, no."[4]

---

[4] The Clinic Note generated after Sarah's examination at the Child Safe Clinic at Rhode Island Hospital reflected the fact that she replied, "Yes," when asked if defendant "put his penis in her butt." The Clinic Note states that Sarah said that that manner of assault "'happened 3-5 times.'" The Clinic Note was entered as a full exhibit at trial.

**The Testimony of Cathy**

On cross-examination, Cathy, Sarah's mother, testified that she "never noticed any blood in [Sarah's] underwear when [she] did [Sarah's] laundry during [the] time period [at issue]."

Further, on cross-examination, the following exchange took place:

> "[DEFENSE COUNSEL]: When you spoke to [Sarah] about this incident that she disclosed in 2007 to you, she didn't tell you which one of [Pamela's] son[s] was responsible; is that correct?
> "[CATHY]: She told me.
> "[DEFENSE COUNSEL]: Do you remember speaking to a doctor at Rhode Island Hospital back on December 5th, 2007?"

The prosecution objected to the last question. A discussion at sidebar ensued. The prosecution stated that the reason for its objection was that the question was "inappropriate impeachment," and the prosecutor also referenced "hearsay." It is clear from the transcript of the sidebar discussion and from defendant's contentions on appeal that his counsel was attempting to cross-examine Cathy with a statement she made at the Child Safe Clinic at Rhode Island Hospital that was reflected in the Clinic Note (which document was admitted as a full exhibit at trial). The Clinic Note states the following: "MOC[5] said the patient told her that when she was approximately six-years-old, she was sexually abused by one of the four sons of the woman who used to baby-sit the patient. * * * MOC said she named all four sons of the baby-sitter and asked the patient 'which one' sexually abused her. MOC said the patient said, 'it was Joe.'" The trial justice ruled on the objection as follows:

> "What it says is mother of child said she, that refers to [Sarah], named all four of the sons and the babysitter and asked the patient which one and it was the mother asked [Sarah], who is patient, which one and she said it was him. So it sounds like it is a consistent statement, not inconsistent. So I'm going to sustain the

---

5  It is evident that "MOC" is an abbreviation for "mother of child."

objection. You can rephrase it. Go with something a little different * * * for what you are trying to establish. I don't think it is contained in the document so the objection is sustained at this point."

We note, additionally, that the Clinic Note reflected the fact that, in reference to the assaults, Cathy said the following: "'and if this is true, I have to go through this;'" it also reflected the fact that Cathy then stated that she believed Sarah but that she "had difficulty understanding 'how this could all happen in the bathroom.'"

## C

### The Testimony of Leslie

While cross-examining Leslie, Sarah's cousin, with respect to Sarah's disclosure of the assaults, defense counsel asked Leslie the following question: "And isn't it true that she couldn't identify to you who did it?" The following exchange then ensued:

"[THE STATE]: Objection as to the characterization. 'She couldn't,' I think that is misstating the testimony.
"[THE COURT]: I will sustain the objection. You can ask it in a slightly different way.
"* * *
"[DEFENSE COUNSEL]: She didn't tell you who did it?
"[LESLIE]: She didn't tell me."

## D

### The Testimony of Doctor Amy Goldberg

Doctor Amy Goldberg testified that she was a "pediatrician with subspecialty training in the area of child abuse pediatrics;" she added that she worked at the "Child Safe Protection Center," also referred to as the "Child Safe Clinic." She was qualified as an expert witness at trial. It was Dr. Goldberg's testimony that Sarah's examination at the Child Safe Clinic was "normal." She added that the examination showed a "loss of tissue" in the "fossa, * * * the area

just below the vaginal opening." Doctor Goldberg testified that the loss of tissue may have been "the way that [Sarah] developed." However, it was also her testimony that "it is something * * * suggestive of penetrating trauma but not definitive."

The Clinic Note from Sarah's visit to the Child Safe Clinic indicated that "[t]he entire hymen was seen and there was no evidence of lacerations or transection," and it stated that the "labia majora and minora were both normal without bruising or scarring." The Clinic Note also referenced the loss of tissue discussed by Dr. Goldberg.

**E**

**The Motion for a New Trial**

On January 9, 2014, the jury found defendant guilty on all five counts. The defendant subsequently moved for a new trial; he contended that the guilty verdicts were not supported by the weight of the evidence. On January 31, 2014, the trial justice held a hearing on defendant's motion for a new trial. At the conclusion of that hearing, the trial justice issued his decision denying defendant's motion. He began by accurately detailing the standard to be applied by a trial justice in deciding a motion for a new trial based on the weight of the evidence. The trial justice discussed the charges against defendant; he then briefly recounted the testimonies of Sarah, Cathy, and Leslie. He further detailed the testimony of Dr. Goldberg. After discussing the testimony, he noted that he was "mindful" of his instructions to the jury, and he acknowledged that "[t]here is no question that in a delayed reporting child molestation sexual assault case such as this, the accuracy, trustworthiness, and ultimately the credibility of the complaining witness will receive the most scrutiny by a jury or a judge sitting as a thirteenth juror." Finally, the trial justice concluded that "all of the essential elements of these offenses were established by credible evidence supplied by [Sarah];" he added that Sarah was "credible

and persuasive," "articulate, thoughtful and reasonably detailed," and "sincere and genuine." He continued as follows:

> "Simply put [Sarah] was believable throughout her testimony. Therefore, this Court finds that it agrees with the jury's verdict. The guilty findings on all five counts are amply supported by the credible evidence in the record. Accordingly, defendant's motion for new trial is denied."

On May 1, 2014, the trial justice sentenced defendant to five concurrent life sentences on the five counts on which he was convicted. On October 20, 2016, defendant petitioned this Court for issuance of a writ of certiorari. The defendant failed to timely file an appeal; nevertheless, we granted his petition for issuance of a writ of certiorari.

## II

## Standard of Review

In ruling on a motion for a new trial based upon the weight of the evidence, a trial justice "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." State v. Barrios, 88 A.3d 1123, 1128 (R.I. 2014) (internal quotation marks omitted); see also State v. Paola, 59 A.3d 99, 104 (R.I. 2013). In so doing, the trial justice must: "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." State v. Muralles, 154 A.3d 925, 931 (R.I. 2017) (internal quotation marks omitted); see also State v. Silva, 84 A.3d 411, 416 (R.I. 2014). After conducting the three-step analysis, if the trial justice "agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." State v. Bunnell, 47 A.3d 220, 232 (R.I. 2012) (internal quotation marks omitted); see also Muralles, 154 A.3d at 932. However, if the

- 8 -

trial justice is not in agreement with the jury's verdict or does not think that reasonable minds could differ, then the trial justice must engage in a fourth analytical step to "determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." State v. Robat, 49 A.3d 58, 71 (R.I. 2012) (internal quotation marks omitted); see also State v. Guerra, 12 A.3d 759, 765-66 (R.I. 2011).

We have stated that the "record should reflect a few sentences of [the trial justice's] reasoning on each point;" but, the trial justice is not required to "refer to all the evidence supporting the decision[.] [R]ather, he or she need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied the appropriate standards." Muralles, 154 A.3d at 932 (emphasis in original) (internal quotation marks omitted); see also State v. Hie, 93 A.3d 963, 975 (R.I. 2014); Robat, 49 A.3d at 71. We "accord[] great deference to a trial justice's ruling on a motion for a new trial if he or she has set forth sufficient reasoning in support of the ruling." State v. Whitaker, 79 A.3d 795, 803 (R.I. 2013) (internal quotation marks omitted); see also State v. Abdullah, 967 A.2d 469, 479 (R.I. 2009). As such, this Court will not disturb a trial justice's decision on a motion for a new trial unless "the trial justice committed clear error or * * * he or she overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case." State v. DiCarlo, 987 A.2d 867, 871 (R.I. 2010) (internal quotation marks omitted); see also Muralles, 154 A.3d at 932.

As for defendant's argument concerning the trial justice's rulings relative to cross-examination, we have previously stated that "the exercise of discretion by the trial justice in limiting the scope of cross-examination will not be disturbed absent a clear abuse of that discretion." State v. Walsh, 731 A.2d 696, 698 (R.I. 1999); see State v. Vargas, 991 A.2d 1056, 1062 (R.I. 2010) ("This Court accords considerable latitude to the rulings made by a trial justice

during an examination of a witness. * * * We overturn such rulings only when there has been an abuse of discretion or substantial injury to a defendant.") (internal quotation marks omitted); see also State v. Bettencourt, 723 A.2d 1101, 1110 (R.I. 1999).

## III

## Analysis

## A

## The Motion for a New Trial

The defendant contends that the trial justice, in ruling on his motion for a new trial, "seemed to ignore the many inconsistencies that undermined [Sarah's] credibility as well as the evidence of her motive to fabricate an assault." He pointed to the following purported inconsistencies: (1) the fact that Sarah initially alleged at the Child Safe Clinic that she had been the victim of penile anal penetration three to five times but stated at trial that she had been the victim of penile vaginal penetration twice and digital vaginal penetration on three occasions; (2) the fact that Sarah told the grand jury that she was assaulted four times in the bathroom and then one time in the bedroom closet but testified at trial that the third assault took place in the bedroom closet while the final two assaults took place back in the bathroom; and (3) the fact that, in defendant's words, Sarah testified during trial that "she loved [defendant] like family," but also that "she did not really even know him." The defendant further avers that Sarah had a motive to fabricate the story because she was angry at her mother and her allegations about Pamela's son effectively ended the friendship between Cathy and Pamela—a friendship that defendant contends had been a "source of conflict" in Sarah's parents' marriage.

The defendant also alleges that "improbabilities" in Sarah's testimony undermined her credibility and were overlooked by the trial justice. The defendant points specifically to the

- 10 -

following statements and facts elicited at trial: (1) Sarah never complained of any physical pain; (2) Cathy never noticed anything unusual in Sarah's underwear; (3) Sarah never complained about going to Pamela's house to be babysat by Gramme; (4) Sarah "made no sound loud enough to be heard by the people in the very next room" during the assaults; and (5) the fact that, according to defendant, Sarah had "no tears in her hymen, no abrasions, no bruising, and no scarring in either her vagina or anus." (Emphasis in original.)

In the instant case, the trial justice began his decision by carrying out the first analytical step in an analysis of a motion for a new trial—that is, he considered the evidence in light of the charge to the jury. See Muralles, 154 A.3d at 931. The trial justice specifically discussed each charge of which defendant had been convicted before moving on to assess the evidence in light of those charges. He detailed the testimony of the witnesses. He stated that Cathy and Leslie testified to the timing and manner of Sarah's eventual disclosure; and he set forth, at length, Sarah's account of the assaults. Finally, he discussed how Dr. Goldberg's testimony corroborated Sarah's testimony. Moreover, the trial justice stated that, in conducting his analysis, he was "mindful of the instruction to the jury." He even quoted the following portion of his instructions to the jury: "'[B]ear in mind that the testimony of a single witness if believed is sufficient for the proof of any fact and can depending on your assessment justify a verdict in accordance with that testimony.'"

The record clearly reveals that the trial justice then moved to the second analytical step and assessed the credibility of the witnesses and weighed the evidence. See id. He stated that he was "aware," as had been the jury, of the fact that, at the time of trial, Sarah was eighteen and was testifying about something that occurred when she was six years old. He noted that, in a "delayed reporting child molestation sexual assault case such as this," the credibility of the

complaining witness "will receive the most scrutiny by a jury or a judge sitting as a thirteenth juror." He then stated that "all of the essential elements of the[] offenses were established by <u>credible</u> evidence supplied by [Sarah]." (Emphasis added.) In addition to finding Sarah's testimony to be credible, he also found it to be "accurate and trustworthy," "articulate, thoughtful and reasonably detailed," "sincere and genuine," and "believable."

The trial justice proceeded to the third analytical step in his analysis of the motion for a new trial—he found that he would not have reached a result different from that reached by the jury. <u>See</u> <u>id.</u> The trial justice stated: "[T]his Court finds that it agrees with the jury's verdict. The guilty findings on all five counts are amply supported by the credible evidence in the record." The trial justice then proceeded to deny defendant's motion for a new trial. <u>See</u> <u>Bunnell</u>, 47 A.3d at 232 (stating that if a trial justice "agrees with the jury's verdict * * * the motion for a new trial should be denied"). Having carefully reviewed the record, we are unable to perceive any error in the trial justice's analysis of defendant's motion for a new trial, and we are more than satisfied that the trial justice sufficiently articulated his reasoning on each step in his analysis of the motion for a new trial so as to be entitled to "great deference" by this Court. <u>Muralles</u>, 154 A.3d at 932; <u>Whitaker</u>, 79 A.3d at 803.

We turn briefly to defendant's contentions on appeal. We acknowledge that the trial justice did not discuss every inconsistency or improbable fact that defendant alleges; however, a trial justice is not required to "refer to <u>all</u> of the evidence supporting [his or her] decision;" he need only refer to enough to allow this Court to determine whether or not he conducted the appropriate analysis. <u>Muralles</u>, 154 A.3d at 932 (emphasis in original). We further note that the existence of some inconsistencies in a witness's testimony does not "preclude a determination that the witness[] w[as] credible." <u>State v. Lopez</u>, 129 A.3d 77, 85 (R.I. 2016). Nor does it

"render the testimony unworthy of belief." State v. Jensen, 40 A.3d 771, 781 (R.I. 2012). In fact, it is normal for "[p]ercipient witnesses * * * [to] differ concerning some details about events in which they had some degree of involvement." Muralles, 154 A.3d at 934 (internal quotation marks omitted). In the end, defendant's contentions with respect to the alleged inconsistencies in Sarah's testimony, the allegedly improbable facts in the case, and Sarah's supposed motive to fabricate the assaults,[6] all boil down to a question of Sarah's credibility. The trial justice found Sarah to be credible; and we will give that determination due deference, bearing in mind the fact that the "trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." Paola, 59 A.3d at 104 (internal quotation marks omitted); see also State v. Harrison, 66 A.3d 432, 446 (R.I. 2013).

Accordingly, it is our judgment that, in dealing with defendant's motion for a new trial, the trial justice did not commit clear error or "overlook[] or misconceive[] material and relevant evidence [relating] to a critical issue in the case." DiCarlo, 987 A.2d at 871.

**B**

**Cross-Examination of the State's Witnesses**

The defendant avers that his constitutional right to present a "full and fair defense" was denied because his counsel's cross-examination of Cathy and Leslie was unfairly limited. In cross-examining Cathy, defense counsel "attempted to highlight the fact that although [Sarah] had alleged that she was penetrated by one of [Pamela's] four sons, [Sarah] could not identify a

---

[6]     We note that defendant's contention that Sarah fabricated the story because she was angry at her mother and her allegation effectively ended the friendship between Cathy and Pamela, a friendship which defendant contends had been a "source of conflict" in Sarah's parents' marriage, is without a factual basis in the record. Indeed, Sarah testified that, by the time of her disclosure, Cathy and Pamela had already "drifted apart."

- 13 -

particular perpetrator until after her mother provided her with a list of names;" but defense counsel was unable to achieve that goal due to the fact that the state's objection to his attempt to impeach Cathy with the statement she made to the Child Safe Clinic was sustained. The defendant contends that the trial justice erred in determining that the statement at the Child Safe Clinic was consistent with Cathy's testimony. With respect to Leslie's testimony, defendant maintains that the following question he asked of Leslie on cross-examination should have been allowed: "And isn't it true that [Sarah] couldn't identify to you who did it?"

The United States Supreme Court has stated that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment * * * or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, * * * the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). Moreover, we have stated that a "criminal defendant has a well-established, constitutionally-protected right * * * to [an] effective cross-examination of the prosecution's witnesses." State v. Bojang, 83 A.3d 526, 539 (R.I. 2014) (internal quotation marks omitted); see State v. Warner, 626 A.2d 205, 209 (R.I. 1993); see also State v. Patriarca, 112 R.I. 14, 37-38, 308 A.2d 300, 315 (1973) ("Due process requires that every defendant have a full opportunity to establish the best and fullest defense available to him."). However, "[t]hat right is not absolute." Bojang, 83 A.3d at 539; see also State v. Kausel, 68 A.3d 524, 531 (R.I. 2013). As we have indicated, a trial justice "retain[s] a considerable degree of discretion to impose reasonable limitations on cross-examination in order to prevent, inter alia, harassment, prejudice, confusion, or repetitive testimony."[7] Bojang, 83 A.3d at 539

---

[7] We have noted that the "discretionary authority to limit cross-examination comes into play [only] after there has been permitted as a matter of right sufficient cross-examination to

- 14 -

(internal quotation marks omitted). What is required for a fair trial is "that <u>reasonable</u> <u>latitude</u> be given the cross-examiner. This latitude should include an opportunity for a defendant to establish or reveal possible bias, prejudice, or ulterior motives as they may relate to the case being tried." <u>State v. Tiernan</u>, 941 A.2d 129, 134 (R.I. 2008) (emphasis in original) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Vargas</u>, 991 A.2d at 1062. With respect to a prior inconsistent statement, a "trial justice in the first instance must determine whether the statement is in fact inconsistent with the witness's testimony * * * and whether the inconsistency is in any way material to the issues involved in the case." <u>State v. Cianci</u>, 430 A.2d 756, 762 (R.I. 1981). Additionally, we remain mindful of the fact that we review the decisions of the trial justice with respect to the cross-examinations of Cathy and Leslie for an abuse of discretion. <u>See</u> <u>Walsh</u>, 731 A.2d at 698.

We begin by addressing Cathy's testimony. After our review of the transcript and the Clinic Note, we are satisfied that the trial justice did not abuse his discretion with respect to his ruling on Cathy's testimony. He was well within his discretion to determine that the statement Cathy made at the Child Safe Clinic was not inconsistent with her testimony at trial. <u>See</u> <u>Cianci</u>, 430 A.2d at 762. Moreover, we note that defendant's cross-examination of Cathy was not limited in the sense that he was unable to explore her possible bias or prejudice or lack of credibility, thus distinguishing this case from our decision in <u>Tiernan</u>; in that case, we held that defense counsel's questioning on cross-examination was limited to such an extent as to be "tantamount to a complete denial of the right to cross-examine the complaining witness about his possible bias." <u>Tiernan</u>, 941 A.2d at 137. That simply cannot be said with respect to the instant case. Furthermore, we point out that the statement that defense counsel wished to use in cross-examining Cathy was contained in the Clinic Note, which was entered as a full exhibit at trial

satisfy the Sixth Amendment." <u>State v. Kausel</u>, 68 A.3d 524, 532 (R.I. 2013) (internal quotation marks omitted).

and, as such, was before the jury. Lastly, the trial justice did not completely restrict defense counsel from asking any question with respect to the Clinic Note; he merely suggested that defense counsel "rephrase [the question]" or "[g]o with something a little different * * * for what you are trying to establish." And, notably, defense counsel then opted to pursue a different line of inquiry.

With respect to the cross-examination of Leslie, the question defendant proposed to ask—"And isn't it true that [Sarah] couldn't identify to you who did it?"—was not consistent with Leslie's testimony. Leslie merely testified that Sarah did not tell her exactly who attacked her; she did not testify that Sarah could not tell her who attacked her. There was certainly no abuse of discretion by the trial justice in this very minor limitation on defendant's cross-examination of Leslie. Accordingly, in our judgment, defendant's right to present a complete defense was not infringed in the instant case.

In conclusion, we are unable to perceive any error on the part of the trial justice in the instant case with respect to his denying the defendant's motion for a new trial or with respect to his rather minimal limiting of the defendant's cross-examination.

## IV

## Conclusion

For the reasons set forth in this opinion, we quash the writ and affirm the judgment of the Superior Court. The papers in this case may be remanded to that tribunal with our decision endorsed thereon.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Joseph Ogoffa. |
| **Case Number** | No. 2016-300-M.P.<br>(P1/08-1159A |
| **Date Opinion Filed** | May 16, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |